No. 19,288.

THE STATE OF KANSAS, ex rel. JOHN S. DAWSON, as Attorney-general, etc., *Appellee,* v. THE CITY OF HARPER, *Appellant.*

SYLLABUS BY THE COURT.

1. QUO WARRANTO—*City of Second Class—Jurisdiction Over Added Territory—Ouster—Burden of Proof on the State.* In a proceeding by the state in courts of general jurisdiction to inquire by what authority a municipality exercises governmental functions the doctrine that the burden of proof is upon the defendant and that the state is not required to show anything rests upon the common-law theory as to the nature and character of informations in quo warranto and has no application in this state.

2. SAME—*Writ of Quo Warranto Abolished—Civil Action Substituted—Presumptions as Rules of Evidence.* Section 679 of the code abolishes the writ of quo warranto and substitutes therefor a civil action governed by the same rules of procedure as other actions. Presumptions as rules of evidence may be invoked against the state in such an action as readily as against an individual in ordinary civil actions.

3. SAME—*City of Second Class—Added Territory—Ouster—Answer of City—Stated Good Defense.* The state brought proceedings in quo warranto to oust the city of Harper, a

The State, *ex rel.,* v. City of Harper.

city of the second class, from exercising authority over certain territory. The answer alleged that in 1884, when the defendant was a city of the third class, the then owner of the land executed and filed for record a plat of the land as and for an addition to the city; that part of the land was platted and part unplatted, and that the land in controversy has ever since been treated by the owner and by the city in every respect as part of and within the corporate limits of the city; that in 1889, as part of the proceedings by which the defendant changed from a city of the third to a city of the second class, the mayor and council certified to the governor an accurate description by metes and bounds of all lands within the limits of the city as it then existed, which description included the territory now in controversy, and that thereupon the governor issued a proclamation declaring the defendant to be a city of the second class having the metes and bounds so certified. *Held,* that the answer stated a good defense and that it was error to sustain a demurrer thereto.

Appeal from Harper district court; PRESTON B. GILLETT, judge. Opinion filed March 6, 1915. Reversed.

*George E. McMahon,* and *Donald Muir,* both of Anthony, for the appellant.

*S. M. Brewster,* attorney-general, for the appellee; *T. A. Noftzger,* of Wichita, and *Vernon I. Day,* of Anthony, of counsel.

The opinion of the court was delivered by

PORTER, J.: By this proceeding the state, on the relation of the attorney-general, inquires by what warrant the defendant exercises its jurisdiction as a city of the second class over certain territory. The city filed its answer setting out the facts upon which it relied, to which the plaintiff demurred. The district court sustained the demurrer, and the city, having elected to stand upon its demurrer, the court rendered judgment ousting the city from exercising or claiming any municipal control or supervision over the territory in controversy and the inhabitants thereof.

The appeal presents the question whether the demurrer was rightly sustained, and this depends upon whether or not the land involved is a part of the city. The following facts appear from the answer: The city of Harper during the year 1884 was a city of the third class; during that year the then owner of the land described in plaintiff's petition duly made and executed a plat comprising the land in controversy, and filed the same in the office of the register of deeds of Harper county as and for an addition to the city of Harper; the lands comprised in the plat lay adjacent to the territory then comprising the city. Part of the land was platted, and part unplatted. The portion platted was divided into blocks to correspond in size to the blocks within the corporate limits of the city, and the streets and avenues described in the plat were made to correspond to the streets and avenues existing in the city, and were given upon the plat the same name as the streets and avenues of the city to which they corresponded. A copy of the plat was attached to the answer. The city continued to exist as a city of the third class until the year 1889, when proceedings were had to change the organization from that of the third to a city of the second class, as provided by law. As part of such proceedings, the mayor and council made out and transmitted to the governor an accurate description by metes and bounds of all lands within the limits of the city as it then existed, in which description was included the territory now in controversy. Thereafter the governor issued a proclamation declaring the defendant to be a city of the second class, having the metes and bounds so certified by the mayor and council. Since 1884 the land herein involved has been treated by the owners and by the city in every respect as part of and within the corporate limits of the city.

At the time the plat of this land was executed and filed for record the only statutory provision respecting the power of a city of the third class to extend its

limits was embraced in section 2 of chapter 37 of the Laws of 1883. So much of section 2 of the act as is applicable here, reads:

"The city council in their discretion may add to the territory adjacent to the city limits as defined and existing at the date of the approval of this act such additional territory as they may deem proper, and shall in every case have power to increase or diminish the city limits in such manner as in their judgment and discretion may redound to the benefit of the city: Provided, That in no case shall any adjacent territory, except when divided into town lots, be added to the limits of a city without the consent in writing of the owner of the territory proposed to be added."

Substantially the same provision was in section 56 of chapter 26 of the Laws of 1869, which was the first act of the legislature authorizing the organization of cities of the third class. (*A. & N. Rld. Co. v. Maquilkin, Sheriff*, 12 Kan. 301.) The act provides for no special procedure for acquiring new territory, but leaves it to the discretion of the council to add additional territory as they may deem proper, and "in such manner" as in their judgment and discretion will redound to the benefit of the city. Except when divided into town lots, however, no adjacent land was to be added to the limits of the city without the consent, in writing, of the owner. The plat, a copy of which is attached to the answer, shows that only a portion of the land embraced in the plat was divided into town lots, and it is this portion of the tract over which the controversy in the present case arises. The act makes no provision as to where the consent shall be filed, and we think there can be no question that the filing of it in the office of the register of deeds was sufficient. The procedure for extending the boundaries of the cities of the third class at that time was very informal. It does not appear from the answer that the city ever enacted an ordinance declaring this territory to be within the city limits, but the petition shows that the city is exercising authority over

it, and the answer alleges that the city has continuously done so for more than twenty-nine years.

While ordinarily estoppel will not lie against the state, some importance must be attached to the fact that the city has exercised jurisdiction over the tract in question for this long period of time with the consent of the owners of the tract, and that the state by the proclamation of the governor in 1889 recognized this territory to be within the limits of the city as then certified and claimed by the city itself. It may be that at this late date the city is not able to show the formal adoption of an ordinance extending its limits to embrace the territory in question. It had the undoubted right in 1884, under the law as it then stood, so to extend its limits, because it had the written consent of the then owners of the land. It must, therefore, be presumed after this length of time that all the proper steps were taken by the city for the purpose of extending its boundaries so as to include this tract of land.

In a very recent case the state sought to inquire as to the right of a city of the first class to exercise authority over territory it claimed to have annexed, and we held that where the validity of an ordinance depended upon the existence of certain jurisdictional facts at the time the ordinance was enacted, the existence and not the nonexistence of such facts necessary to sustain the ordinance should be presumed in the absence of evidence to the contrary. (*The State, ex rel., v. City of Atchison,* 92 Kan. 431, 140 Pac. 873.) It was vigorously contended in that case by the state that where the sovereign inquires by quo warranto into the right of an individual to exercise the privileges of an office or the right of a municipal corporation to exercise authority, the burden of proof rests upon the person or municipality to show its right, and that no presumptions are to be indulged in such case as against the state in favor of the defendant. This contention was not upheld. It rests upon the common-law theory

as to the nature and character of the writ in quo warranto.   One of the cases much relied upon by the state in the Atchison case is *McGahan v. The People,* 191 Ill. 493, 61 N. E. 418.   The Illinois case is in line with the authorities in that state running back as far as *Clark v. The People, ex rel. Crane,* 15 Ill. 213, 217, holding that the people, that is the state, are not bound to show anything in a proceeding by quo warranto.   That was the doctrine of the common law, but our code-(§ 679) abolishes the writ of quo warranto and substitutes in its stead a civil action.   It is true, as we held in *The State v. Brewing Association,* 76 Kan. 184, 189, 90 Pac. 777, the language of the constitution conferring original jurisdiction upon this court in quo warranto is broad enough to authorize "all the relief which at common law could be given by a quo warranto proceeding of any kind."   (p. 189.)   But the action itself is to be tried with the same procedure and the same rules of evidence that apply to other civil actions.   Presumptions, which are but rules of evidence, may be invoked against the state as readily as against an individual.

In the numerous quo warranto proceedings filed in this court in recent years wherein the state has sought to oust cities and city and county officials from the exercise of functions and privileges unauthorized by law, it has never been supposed that the burden of proof rested upon the defendants to show that they were not exercising privileges, offices or functions without authority.   On the contrary, the usual practice has been to appoint a commissioner and have evidence taken, and the burden of proof has always been assumed by the state.

To follow the decision of the court in *The State, ex rel., v. City of Atchison,* supra, would require us to reverse the judgment here and remand the case for further proceedings, upon the well-settled theory that the exercise by the city during all these years of authority over this territory without dispute presupposes

the existence of all jurisdictional acts to make the conduct of the city legal, and that as against a demurrer, at least, this presumption must obtain until overcome by evidence, and therefore that the court should have overruled the demurrer to the answer. (*Knox County v. Ninth National Bank,* 147 U. S. 91, where it is said that it is "a rule of very general application, that where an act is done which can be done legally only after the performance of some prior act, proof of the later carries with it a presumption of the due performance of the prior act.") (p. 97.) See, also, *Bank of the U. S. v. Dandridge,* 25 U. S. 64, 70, and *Nofire v. United States,* 164 U. S. 657, where the rule was referred to as follows:

"This is the general rule in respect to official action, and one who claims that any such prerequisite did not exist must affirmatively show the fact." (p. 660.)

It is quite apparent from the record that the city would never be able to establish proof that an ordinance was passed annexing the disputed territory, so that if the case was sent back for trial the state would be able to prove that there was no record of such an ordinance. However, we are impressed with the belief that this case should be ended, and that the city under the particular circumstances of the case and after the expiration of such a period of time should not be prejudiced in any way by its inability to show that an ordinance was passed annexing the territory. As observed, there was no express provision as to the manner in which cities of the third class should proceed in annexing territory. It was from the time of the filing of the plat treated by the city and the owner as a part of the city. In 1889 the state, through the governor, proclaimed it to be a city of the second class, having metes and bounds certified to it by the then council of the city which included this territory, and, in our opinion, this made it a city of the second class with the boun-

Kirby v. Railroad Co.

daries thus declared. The answer, therefore, stated a good defense, and it was error to sustain the demurrer.

The judgment will be reversed, and the cause re-- manded with directions to overrule the demurrer and to render judgment for the defendant.

DAWSON, J., not sitting.