The State, *ex rel.,* v. Dowling *et al.*

---

No. 25,608.

THE STATE OF KANSAS, ex rel., etc., *Appellee,* v. W. R. DOWLING et al., *Appellants.*

SYLLABUS BY THE COURT.

1. QUO WARRANTO—*Validity of Organization of Joint Rural High-school District—No Infirmity in the District Organization.* In an action in quo warranto to determine the validity of the organization of a joint rural high-school district, the record examined, and *held,* that no infirmity in the district organization was established and that the defendant district officials were entitled to judgment.

2. SAME—*Conclusiveness of Official Acts—When Performed in Good Faith Not Subject to Review.* Where the statute confers authority on a board of county commissioners to call an election on the proposition to establish a joint rural high-school district, upon the presentation of a petition signed by two-fifths of the electors of the territory concerned, and upon an enumeration of the electors of such territory taken by a resident elector and certified to the county board by his affidavit, the county board has jurisdiction to determine the sufficiency of the petition and of the enumeration; and where there is neither allegation nor proof of fraud or similar misconduct affecting the official action of the county board its determination that the petition and enumeration were sufficient is conclusive and not subject to judicial review—following *The State, ex rel., v. Holcomb,* 95 Kan. 660, 149 Pac. 688.

Appeal from Decatur district court; WILLARD SIMMONS, judge. Opinion filed January 10, 1925. Reversed.

*Leigh D. Dowling,* of St, Francis, and *W. S. Langmade,* of Oberlin, for the appellants.

*A. C. T. Geiger, J. F. Peters,* both of Oberlin, and *L. H. Wilder,* of Norton, for the appellee.

The opinion of the court was delivered by

DAWSON, J.: This was an action in quo warranto challenging the validity of the organization of joint rural high-school district

No. 4, Decatur and Norton counties. The district was created in the summer of 1921 and since that time it has been functioning as a legal organization. The state charged that the boundaries of the district were not clearly defined at the time it was petitioned for and that no accurate enumeration of the legal electors was taken from which it could have been clearly ascertained that two-fifths of the interested electors desired that an election for the creation of such a district should be called. Another alleged defect in the preliminary steps to create the district was that the requisite sanction of the county superintendents of Decatur and Norton counties and of the board of county commissioners of Decatur county was never given to the proposed organization.

The defendants, as members of the school district concerned, answered, justifying their assumption of official powers by pleading with pertinent details the various procedural steps by which the district was created—the presentation of a petition to the county board of Decatur county, containing the names of more than two-fifths of the electors concerned, the delimitation of the proposed district, the approval of the county superintendents and county boards of the two counties, the election and its results, showing a majority of votes favorable to the creation of the district, and the special election called thereafter, at which the defendant officers were chosen and pursuant to which they had qualified and assumed their official powers.

Trial by the court; evidence documentary and oral was introduced on· behalf of plaintiff and defendants; findings by the court as follows:

"The pretended rural high school mentioned in plaintiff's petition has no legal existence, that all proceedings had toward the organization of said pretended rural high-school district are void and of no effect. That the board of county commissioners of Decatur county, Kansas, had no jurisdiction to establish said rural high-school district; that there was no enumeration as provided by law in such cases and that there is no evidence whatever and no showing that there was any approval of the boundaries of said pretended rural high-school district by the superintendent of Norton county, Kansas, as provided by law; that the allegations of plaintiff's petition are fully established and the defendants have no authority to act as officers of said pretended rural high-school district."

Judgment for the state was entered pursuant to the findings; and defendants appeal, urging various errors, which are mainly concerned with the competency and probative force of the evidence and the legal consequences flowing therefrom.

On the question whether the proposed rural high-school district had the requisite approval of the county superintendents and county boards, there was documentary evidence that the county superintendent of Decatur county approved the creation of the district on June 6, 1921, and that prior to that date, some time in May, she had given her informal approval thereto; it was also shown that the project had been the subject of correspondence and conversation between herself and the county superintendent of Norton county and that the latter had acquiesced in the proposition. The superintendent of Norton county made certain memoranda of the action of her predecessor, Miss Wyrill, who retired from office May 9, 1921, and who had approved it, but who apparently had failed to make a record of her approval. The county superintendent of Norton county, Mrs. Newbold, testified:

"Q. He [R. W. Dole] was chairman of the board of county commissioners at the time testified about? A. Yes, sir.

"Q. This notation—'Mrs. Newbold: Miss Wyrill [predecessor] approved the within rural high-school district on May 9th, 1921. Please make a record to that effect. R. W. Dole.' That is his writing on the back of this—this notation on the back? A. Yes, sir. . . .

"Q. Do you know from this record or otherwise when you wrote it? A. Yes, June 6th, 1921. . . .

"Q. Did you approve this school-district boundary in any way? A. No, I didn't have to approve it. *It was already approved.*

"Q. Did you make any record? A. Nothing more in the office than what I have here, what I am shownig you.

"[Counsel for the state]: All you have ever had to do with this record was done on June 6th, 1921, was it? A. That is the only thing I had to do in that regard."

It was also shown that the board of county commissioners of Decatur county approved the petition on June 6, 1921, and ordered the election thereon; also that the enumeration of the territory affected had been made by one Groseclose and that such enumeration was discussed and considered by the county board, and it was shown that 301 names of electors were attached to the petition which had been presented to the county board, and that two affidavits had been filed by Groseclose, a legal elector of the district, deposing that he had made the enumeration of the legal electors and that there were 548 electors in the territory concerned. Such files and records used in the formative stages of the district organization as had been preserved were offered in evidence.

Without attempting to follow appellants' assignment of errors in detail, let us notice with care the trial court's findings of fact. Per-

haps these findings would better be designated as mixed conclusions of fact and of law. But such as they are, it is difficult, indeed, to find support for them in the record. Whether or not the defendant district has a legal existence depends upon the validity of the proceedings leading thereto. Now what was the matter with the proceedings? Merely that the enumerator, a rural preacher and day laborer, took the census of voters of the territory in a shabby little notebook in which he also kept his personal memoranda about his private work and labor, Chautauqua expenses, the purchase of coal, and shipments of clothing for European relief, etc. But if the little notebook is studied with patience the relevant enumeration is readily severable from the irrelevant personal contents, and there is not the slightest reason for assuming that the enumeration did not have due attention from the only tribunal which had any concern with it— the board of county commissioners of Decatur county. Since there was neither charge of fraud or similar misconduct, the ascertainment of the number of electors in the district and of the sufficiency of the petition for the calling of the election were exclusively the official concern of the county board. This court has repeatedly held that where the determination of the existence of prerequisite facts to authorize official action is vested in a local tribunal, such as a county board or a mayor and city council, its determination is conclusive and is not subject to review except in cases of fraud or similar misconduct of sufficient gravity to vitiate it. (*The State, ex rel., v. City of Atchison,* 92 Kan. 431, 140 Pac. 873; *The State, ex rel., v. City of Harper,* 94 Kan. 478, 146 Pac. 1169; *The State, ex rel., v. Holcomb,* 95 Kan. 660, 149 Pac. 684; *The State, ex rel., v. City of Victoria,* 97 Kan. 638, 641, 156 Pac. 705; *The State, ex rel., v. School District,* 113 Kan. 441, 215 Pac. 453. See, also, *Town of Olsburg v. Pottawatomie County,* 113 Kan. 501, 215 Pac. 451.)

On analysis of the trial court's findings it will be noted that the infirmities in the organization of defendant district were specifically these:

(a) The board of county commissioners of Decatur county had no jurisdiction to establish the high school.

(b) There was no enumeration as provided by law.

(c) There was no evidence that the county superintendent of Norton county had approved the boundaries of the proposed district.

(d) That the allegations of plaintiff's petition are established.

Briefly as to these: Jurisdiction was conferred on the board of county commissioners of Decatur county by the presentation of the

petition signed by two-fifths of the legal voters of the proposed district, containing appropriate recitals and requesting that an election be called to vote on the proposition to establish the high school. The statute in force at the time the proceedings were initiated was chapter 284 of the Laws of 1917. When that petition was presented the county board had jurisdiction to receive it, to ascertain its purpose and its genuineness and its sufficiency. Its sufficiency depended on the question whether two-fifths of the electors concerned had signed as petitioners. The county board had jurisdiction to determine that question. How? The statute provided that an enumeration should be taken by a resident legal elector and by him certified under oath to the county board. The state assumes that this enumeration should be taken on a neat and presentable document, to which a certificate of the census taker under oath should be attached and carefully preserved in the files of the county board. That would be the efficient and businesslike way of doing it. But because such efficient and businesslike method of making the enumeration and preserving the record of it was not made, it will not do to deduce therefrom that the enumeration which was made was not legal. Even lawyers and judges, who are bound to know how legal business should be dispatched, sometimes fail to make and preserve records of official acts of the highest importance—the records of final judgments. But their good sense has discovered a practical method of curing such oversights, by recording such judgments *nunc pro tunc,* and on necessity such record will be made many years after the judgment was rendered. (*K. C. F. S & G. Rld. Co. v. Tontz, Treas.*, 29 Kan. 460; 34 C. J. 71, 77.) Here, while it will be agreed that the enumeration was crudely executed, it is perfectly clear that the enumeration was taken and it was certified on oath by the person who took it. The statute does not say the enumeration shall be taken on some particular form of document nor that it shall be filed with the enumerator's affidavit. And if it did require it to be so filed, it is not yet too late to file it. It has not been destroyed. It has been submitted for the inspection of this court, and despite the irrelevant private data contained in the book the numeration there taken is not *prima facie* insufficient, in our opinion; but whether we would so adjudge it need not be stated, since its sufficiency was exclusively for the county board to determine, and not the concern of the trial court or this court.

Touching the finding of the trial court that there was no evi-

32—117 Kan.

dence that the county superintendent of Norton county had approved the boundaries, it might be sufficient to say that this court some years ago, for reasons which seemed good at the time, held that under our Kansas practice the old common-law rule that in actions in quo warranto the defendant always had the burden to justify his exercise of official power (if he did not deny) did not prevail; that the burden was on the state to charge usurpation or want of official power and to prove it. (*The State ex rel. v. City of Harper,* 94 Kan. 478, syl. ¶ 1, 146 Pac. 1169.) Applying that rule to this case, the burden was on the state to show that the county superintendent did not approve the proposed boundaries. The state did not prove that. All that the state did show was that Miss Wyrill, the county superintendent of Norton county who· retired from office on May 9, 1921, had failed to make a record of her approval. But in the state's examination of Mrs. Newbold, the superintendent who succeeded Miss Wyrill, it became perfectly clear that the boundaries had been approved by Miss Wyrill; and if Miss Wyrill had not approved of them it could and should be held that the ready acquiescence of Mrs. Newbold in making a belated record of the matter at the suggestion of the .chairman of the board of county commissioners of Norton county, and her unstinted official recognition of the district's legal status, were the equivalent of her own approval. (*H. & S. Rld. Co. v. Comm'rs of Kingman Co.,* 48 Kan. 70, at pages 78, 79, 28 Pac. 1078.)

We note that the trial court excluded some proffered oral testimony that Miss Wyrill had in fact approved the boundaries. The state's objection was that such was not the best evidence. The objection was not good. The not-the-best-evidence rule only applies where better evidence than that offered does exist and is available. Here there was none. The oral evidence was perfectly proper. (*C. K. & W. Rld. Co. v. Comm'rs of Stafford Co.,* 36 Kan. 121, 12 Pac. 593; *Gigoux v. Henderson,* 107 Kan. 325, 329, 190 Pac. 1092; *Gilmer v. School Dist. No. 26,* [Okla.] 50 L. R. A., n. s., 99 and note.)

Touching the other matters involved in the trial court's general finding that the allegations of plaintiff's petition were established, the only apparent question left for review is the point whether there was in fact any uncertainty in the boundaries of the defendant district as proposed at the time the .proposition to organize was approved by the superintendents of the two counties and as

The State, *ex rel.,* v. Dowling *et al.*

recited in the petition signed by the electors and presented by the Decatur county board. We have examined the plethora of exhibits submitted to this court, as well as the petition to the Decatur county board, and the evidence touching the approval of the county superintendents, and the action of both boards of county commissioners (although official action by the Norton county board was perhaps unnecessary as the statute then provided), and we find no substantial evidence to support the plaintiff's allegation that the boundaries of the district were uncertain; and the only apparent basis for that allegation was the fact that the county clerk of Decatur county had made an error in his records, which he was properly permitted to correct while giving his testimony, and that an inaccurate map of the district had been hurriedly and incorrectly copied into an atlas by some private person for the convenience of the county superintendent of Decatur county. In her direct examination she testified that she had approved the district boundaries as shown in that map, but on cross-examination her attention was called to defendant's exhibit 1, which she readily recognized as the map which she did officially approve; and the boundaries of the district as shown on that map coincided with those of the district petitioned for, coincided with the territory whose electors were enumerated, and coincided with the boundaries shown on the map, Plaintiff's exhibit B, presented to the county superintendent of Norton county, and in accord with the boundaries of the district as it has been functioning since its creation in the summer of 1921. Those boundaries are as follows:

"All of Lincoln township in Decatur county; all of sections Nos. 4, 5, 6, 7, 8, 9, 16, 17, 18, 19, 20, 21, 28, 29, 30, 31, 32, 33, in Rockwell township in Norton county; all of sections Nos. 3, 4, 5, 6, 7, 8, 9, 10, and the northeast one-fourth of section 15 and the north one-halves of sections 16, 17, 18, in Clayton township in Norton county; all of sections Nos. 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, in Garfield township in Decatur county."

The map, defendant's exhibit 1, drawn in conformity with the boundaries as above defined, was indorsed as follows.

"As approved May 16, 21.
        "Approved June 6, 1921.
                        "ROMAINE WYATT,
                            [*County Supt. Decatur Co.*]
                        "FINNIS PENN,
                            "*Chairman of the Board,*
                                [*Co. Com. Decatur Co.*]
        "Filed this 6th day of june, 1921—GEORGE NELLANS, *County Clerk Decatur Co.*"

A similar map, plaintiff's Exhibit "J," bore the following indorsements:

"We, the undersigned, county commissioners of Norton county, Kansas, in conjunction with the county superintendent of Norton county, have this day approved the proposed Norcatur rural high-school district, as shown by the within plat.

"Dated this 9th day of June, 1921.

"Signed:   R. W. Dole, *Chairman.*
"John Donovan.

"I hereby certify that Pearl Wyrill, county superintendent of Norton county, approved the proposed Norcatur rural high-school district on May 9th, 1921, as shown by the within plat.                    Signed:   R. W. Dole."

A painstaking examination of the record, stressing the files, documents, maps and memoranda of official proceedings, and giving the strongest possible significance to the state's oral testimony, and minimizing or ignoring altogether the oral testimony given in behalf of defendants, impels this court to hold that the evidence did not maintain the plaintiff's cause of action nor justify the judgment, and that no infirmity affecting the legal integrity of defendant district exists and that defendant is entitled to judgment.

Reversed with instructions to enter judgment for defendants.

Dawson, J. (concurring): I fully concur in the opinion and judgment of the court. I wish to add, however, that I think the court ought to abandon the novel and illogical rule that the state has the burden of proof in quo warranto like any plaintiff in an ordinary lawsuit, as announced in *The State, ex rel., v. City of Harper*, 94 Kan. 478, syl. ¶ 1, 146 Pac. 1169. It is comparatively so easy for a defendant to justify his exercise of official powers if he has lawful authority, and frequently so difficult for the state to prove that defendant has no such authority—involving the awkward problem of proving a negative—that the old rule of evidence which imposed the burden of justification on defendant was a much more practical one. As late as the case of *The State, ex rel., v. City of Atchison*, 92 Kan. 431, 434, 140 Pac. 873, the old rule was still recognized by this court. For the good of the public service, the rule announced in section 1 of the syllabus in the case of the city of Harper should be abandoned' although it would not affect the judgment in this case. Here the defendants did not content themselves with demurring to plaintiff's insufficient evidence, but took up the burden of proving affirmatively that their exercise of official powers was fully justified.