No. 29,052.

THE STATE OF KANSAS, ex rel. E. C. MINNER, as County Attorney of Ford County, *Appellant*, v. RURAL HIGH-SCHOOL DISTRICT No. 2, in Clark County, et al., *Appellees*.

(280 Pac. 892.)

Opinion filed October 5, 1929.

*E. C. Minner,* county attorney, *F. Dumont Smith,* of Hutchinson, and *Carl Van Riper,* of Dodge City, for the appellant.

*H. R. Daigh,* of Ashland, for the appellees.

The opinion of the court was delivered by

HUTCHISON, J.: This is an action in quo warranto brought by the state on the relation of the county attorney of Ford county, in the district court of Ford county, to test the validity of the organization of joint rural high-school district No. 2, Clark county, comprising land lying in Clark and Ford counties, and to enjoin the county clerk of Ford county from extending the tax levy, certified by the joint district, to the land in Ford county claimed to be included in the joint district. The case was tried by a judge *pro tem.,* who made extended findings of fact and conclusions of law, rendering judgment in favor of the validity of the organization of the district, and the state appeals from that judgment.

The petitioners for the organization of the joint district were proceeding under the provisions of R. S. 72-3501, which directed that the boundaries of the proposed joint district may be approved "by the state superintendent of public instruction in case the county superintendents and boards of county commissioners of two or more counties shall fail to agree on the approval of the boundaries of the proposed district, and to establish, locate and maintain therein a rural high school as hereinafter provided." The serious contention in the case is whether or not the board of county commissioners of Clark county approved the boundaries. It is conceded that the county superintendent of Clark county gave her approval thereto.

It is not contended by the defendants that the approval of the county superintendent of Clark county alone would be sufficient as a basis of disagreement under the statute just quoted to take the case to the state superintendent of public instruction without the concurring approval of the board of county commissioners of Clark county. The record of the action of the board of county commissioners of Clark county is contingent and conditional to such an extent that taken alone it could scarcely be called an approval. It is as follows:

"The board agreed to approve the boundaries of the proposed rural high-school district, provided that the Ford county commissioners would also approve the same."

This action was taken before the matter was formally presented to the Ford county board, which never did give its approval. If this were the sum total of the showing on this question it would, under the theory of both sides, lack a vital essential in making it a case that could be referred under the statute to the state superintendent. The statute plainly makes a disagreement between the officers of the different counties a prerequisite to the conferral of authority upon the state superintendent to determine the matter of district boundaries.

The trial court in the third finding of fact immediately following the quotation above given from the record of the county board of Clark county further found that: "Complete boundaries of the district as now petitioned for were before the board at this meeting and understood by them." And in the opinion following the findings of fact the trial court referred to this particular point in the following language: "the county commissioners of Clark county wavered by not making a specific and unconditional finding one way or the other, but from the record they made and the testimony of the chairman of the board it would appear that they had all of the facts before them and that they were favorable to the boundary as proposed." Although the testimony of the chairman of the board does not strengthen the showing of approval by the board it does show that the board had all the facts before it, and other testimony shows that the board was in fact favorable to the boundaries proposed and did in fact approve them. The record to which the trial court referred is the strongest kind of proof of the attitude of the board on the question of approval or disapproval of the proposed boundaries at the time the petition was presented. The order re-

ferred to is the one subsequently made by the board and signed by all three members thereof, calling the election for the purpose of voting on the question of the boundaries of the proposed district. It enumerates the papers and record it had examined in connection therewith; the last three were described as follows: "the order of approval of the state superintendent of public instruction of the state of Kansas made in said matter as shown by the files in the office of the county clerk of Clark county, Kansas, and the superintendent of schools of Clark county, Kansas, and the former order of approval of this board, all approving the boundaries of said proposed rural high-school district." We are not unmindful of the fact that a subsequent statement calling a former action an approval will not make it such if it were not, and that it must have been an approval at the time it was presented and considered in order to make the case a proper one to be carried up to the state superintendent.

In addition to the two orders of record, one a conditional approval and the other a subsequent one referring to it as a complete approval, we have in the record the evidence of the county clerk who made the entry. He testifies that the board did approve the boundaries at the time the first or conditional order was entered by him. There is also the testimony of the witness Murphy, who was present at the board meeting and states that the boundaries were approved at that time by the board. Such evidence is competent and admissible where the record is indefinite or incomplete.

"*Held,* That it was competent to prove, by parol evidence, that the county clerk was directed by the board of county commissioners to subscribe the stock; and also *held,* that the evidence in said action from one of the commissioners that he did not hear the order or direction given to the clerk, did not render the order invalid. *Held, further,* That upon the facts testified to in this case, the subscription made in the name of the county is valid." (*C. K. & W. Rld. Co. v. Comm'rs of Stafford Co.,* 36 Kan. 121, syl. ¶ 1, 12 Pac. 593.)

The failure of the county clerk to enter on the record fully the action of the board does not invalidate the order.

"*Held,* that the failure of the county clerk to enter the order of the county board calling the election, upon the records of the county, will not invalidate the election." (*State, ex rel., v. Comm'rs of Pratt Co.,* 42 Kan. 641, syl. ¶ 1, 22 Pac. 722.)

A belated record is proper to supplement and clarify an earlier incomplete or indefinite one.

"All that the state did show was that Miss Wyrill, the county superintendent of Norton county, who retired from office on May 9, 1921, had failed to make a record of her approval. But in the state's examination of Mrs. Newbold, the superintendent who succeeded Miss Wyrill, it became perfectly clear that the boundaries had been approved by Miss Wyrill; and if Miss Wyrill had not approved of them it could and should be held that the ready acquiescence of Mrs. Newbold in making a belated record of the matter at the suggestion of the chairman of the board of county commissioners of Norton county, and her unstinted official recognition of the district's legal status, were the equivalent of her own approval. . . .

"We note that the trial court excluded some proffered oral testimony that Miss Wyrill had in fact approved the boundaries. The state's objection was that such was not the best evidence. The objection was not good. The not-the-best-evidence rule only applies where better evidence than that offered does exist and is available. Here there was none. The oral evidence was perfectly proper." (*State, ex rel., v. Dowling et al.,* 117 Kan. 493, 498, 232 Pac. 615.)

"Under the statute providing that a petition for the calling of an election to vote on a proposal to organize a rural high-school district shall recite that the boundaries have been approved by the county superintendent and commissioners, the omission of such recital and the fact that the boundaries were not approved by such officers until after the petition was signed (but were so approved before it was acted upon) are mere irregularities, insufficient to require a court to set aside the attempted organization of the district in an action brought in the name of the state." (*State, ex rel., v. School District,* 113 Kan. 441, syl. ¶ 2, 215 Pac. 453.)

We concur with the trial court in the finding that the boundaries of the proposed district were approved not only by the county superintendent of Clark county but also by the board of county commissioners at the regular meeting in February, 1927.

Another question in connection with the approval by the Clark county board and the disapproval by the Ford county board is the matter of the description of the land in Ford county in the proposed district. The court in its findings speaks of a confusion existing at first in the conferences in Ford county, but finds the petition embraced one certain township, or six miles square, in Ford county when considered by the officers of Ford county at the March meeting. It is argued from this that certainly a different description was used at the time the matter was presented to the county board of Clark county. But the court's findings are strongly supported on this point by the positive testimony of Mr. Carson, chairman of the board, Mr. Pike, the county clerk, and Mr. Murphy, that the Ford county land embraced in the proposition considered by the Clark

county board was six miles square, describing it. The evidence of two of the county commissioners and the county superintendent of Ford county is set out at great length in the supplemental abstract to show an earlier plan to include 72 sections and later 60 sections, instead of 36, as claimed by the defendants, but it must be remembered that on this question there was a conflict of testimony; other witnesses testified that at both February and March meetings in Ford county the proposition was limited to the tract six miles square in Ford county. There was sufficient evidence to that effect, if believed by the trial court, to sustain the finding and that is the extent of the duty of a court of review in a matter of conflict of testimony.

Appellant in the supplemental brief complains that there was no proof of the facts alleged in the answer as to an appeal having been taken to the state superintendent of public instruction. In the first place the statute does not prescribe any rules or requirements to be followed in submitting to that state officer a matter of this kind when there is a disagreement. So it would appear that any procedure which would ordinarily afford both parties to the disagreement a reasonable and fair opportunity to present their views would be proper. In respect to the appeal the defendant alleged the following:

"That upon the failure of the named officials of Clark and Ford counties to agree on said approval an appeal was at once carried to the state superintendent of public instruction; that the state superintendent took jurisdiction and had correspondence with the Ford county officials relative to the question on appeal; that thereafter the state superintendent fixed a definite day for a hearing of the appeal; that both parties to the appeal were notified by registered mail of the date, time and place of said hearing; that at the date, time and place the officials of Clark county appeared by Mr. Wallace, a member of the school board at Minneola, Mr. Maxfield, the superintendent of schools, and their attorney and the officials of Ford county failed to appear in person or by representative, but did appear by letter; that thereupon the state superintendent of public instruction heard the representative of the defendant district and, after being fully informed in the premises, approved the boundary lines of this defendant district on May 15, 1928."

The following is some of the evidence the record shows as to the appeal. Witness Murphy testified that he and Bolinger took the petition and other papers, including maps, to Topeka and presented them to the state superintendent on March 14, 1927; that the state superintendent afterwards, in October, wrote him for further information as to description, and the information was sent. Mr. Redfield, one of the commissioners of Ford county, testified he had

heard that the Clark county delegation had taken the matter up with the state superintendent and that he knew the appeal was pending with the state superintendent when the board granted the petition for the second Ford county district January 14, 1928. Mrs. Cobb, the county superintendent of Ford county, had notice of the appeal directly from State Superintendent Allen by telephone in April, 1927. The only other communication she had with the state superintendent was when he notified her there was to be a hearing in the case and in response she sent the superintendent the material in regard to the Ford county district. The notice from him was dated May 10, stating the hearing would be May 15, 1928. The findings show the order of the state superintendent was made on May 15, 1928.

We think the evidence develops facts connected with the attempted appeal sufficient to show the state superintendent was duly authorized to assume control of the case and recognize a disagreement which it was his duty under the statute to solve, and that officers of Ford county were sufficiently informed and notified of the appeal to give the state superintendent full authority to proceed with the hearing upon the disputed question. The material sent by the county superintendent was, from her description, in the nature of a defense. There is no purpose or occasion for the use of cumbersome and technical requirements in taking such a disagreement to a higher tribunal or arbitrator than there is in the first instance with the county superintendent and county board, when, as stated above, there are no statutory requirements for such details. The procedure ought to be more or less informal so long as the rights of all parties are protected and they are afforded an opportunity to be heard.

"The preliminary steps to secure the approval of the boundaries of a proposed rural high-school district by the county superintendent and the board of county commissioners under section 72-3501 of the Revised Statutes are informal, and a petition or application signed by residents or voters of the proposed district asking for such approval is not necessary." (*State, ex rel., v. Miley*, 120 Kan. 321, syl. ¶ 1, 243 Pac. 262.)

The appellant insists that the statute authorizing the organization of such districts contemplates that the enumeration required to be taken of the legal electors residing in the proposed district should be taken very shortly before such election, and complains that the enumeration in this case as shown by the evidence was taken many

months before the calling of the election, and that the number of legal electors might have materially changed in the meantime, so that the two-fifths provision might be very unjust under such changed circumstances. To make this criticism effective there should have been a showing of some such change and consequent injustice. However possible such change and injustice may be, it will not be presumed, and the staleness of the enumeration will not affect the proceedings without a showing of a change or prejudicial result. This question was considered in the case of *State, ex rel., v. Dowling et al.,* supra, and it was there held that no technical or specially exacting compliance was required.

We conclude that the findings of the court are sustained by the evidence, and we concur in the conclusion reached by the trial court that the organization of the joint district was valid.

· The petition, the answer and the briefs on both sides refer to the proceedings for the organization of another rural high-school district consisting of land lying wholly within Ford county and including the six miles square that was embraced in the joint district under consideration. The initial step in the organization of this district was taken January 14, 1928, which was eleven months after the similar beginning of the proceedings for organization of the joint district.

The new district and those representing it were not made parties to this action. We are here upholding the validity of the joint district and are not passing upon the regularity or irregularity of any of the proceedings in connection with the organization of the new district except to conclude that we find nothing in the record occurring subsequent to the inception of the joint-district organization to disturb or affect its validity.

The judgment is affirmed.

HARVEY, J., not sitting.