No. 36,372

THE STATE OF KANSAS, *ex rel.* WILLIAM N. TICE, as County Attorney of Mitchell County, *Plaintiff*, v. ROBERT GUGGISBERG (ALBERT HILMER substituted), CHARLES STEINHAUS and W. H. GOOD, as the Board of County Commissioners of the County of Lincoln, *Defendants*.

(160 P. 2d 938)

Opinion filed July 26, 1945.

*Wm. N. Tice,* county attorney of Mitchell county, *A. B. Mitchell,* attorney general, and *Leon W. Lundblade,* assistant attorney general, were on the briefs for the plaintiff.

*Theodore M. Metz,* county attorney of Lincoln county, was on the briefs for the defendants.

The opinion of the court was delivered by

THIELE, J.: This is an original action in quo warranto in which the plaintiff seeks to determine the right of the defendant board to proceed in the organization of a rural high school district under the provisions of G. S. 1935, 72-3501 *et seq.* as amended, and to oust the defendant board from further action under that statute.

It is not necessary that the pleadings, nor what followed, be set forth in any detail. After issues were joined, the plaintiff and defendants asked that a commissioner be appointed to hear testimony on issues of fact. A commissioner was appointed, who heard the evidence and made and returned into court his findings of fact and conclusions of law, including one that the relief prayed for should be denied.

Plaintiff concedes that the findings of fact made are supported by the evidence, and that the only issue remaining in the case is whether a board of county commissioners, having approved the boundaries of a rural high school district, may later withdraw that approval, under the circumstances here existing.

The pertinent facts are as follows:

The city of Barnard lies in the northeast corner of Lincoln county and about two miles from the south line of Mitchell county. Persons residing in the Barnard community presented a proposal to establish a rural high school district, the boundaries of which included about seventy-eight sections of land in Lincoln county and about thirty-five sections of land in Mitchell county, to the board of county commissioners of Lincoln county and to the county superintendent of that county, and December 1, 1944, each of them approved the proposed boundaries. Immediately thereafter the proposal was informally presented to the county superintendent of Mitchell county, who refused approval as presented, but as the result of what that county superintendent denominated as "horse trading," there was an agreement on boundaries including the lands in Lincoln county and eight sections of land in Mitchell county. It may be stated briefly that the board of county commissioners of Mitchell county and the county superintendent of that county on December 13, 1944, approved the boundaries, as last indicated, and thereafter and on December 26, 1944, the board of county commissioners of Lincoln county and the county superintendent of that county approved the same. Without going into any detail apparently some persons in the eight sections in Mitchell county were dissatisfied, some perhaps because their lands were included, and some perhaps because other lands excluded were not included. Some of them talked to members of the board of county commissioners of Mitchell county, and that board on January 2, 1945, adopted a resolution purporting to rescind its previous action of approval, and on the following day copies of the resolution were filed with the county clerk and the county superintendent of Lincoln county. Shortly after the approval by the Lincoln county officials on December 26, 1944, electors within the proposed district commenced circulation of petitions for an election under the statute and a considerable number of electors had signed prior to January 2, 1945. Of the total number of electors, twenty-four resided in Mitchell county and of these sixteen signed the election petitions. On Feb-

ruary 6, 1945, the board of county commissioners of Lincoln county, which had the power and duty under the statute, as the greater portion of the territory was in that county, found that the petitions for an election were sufficient, and called an election to be held March 9, 1945, and the election was duly held that day. The instant action was commenced on February 13, 1945, and without detailing any motions for interlocutory relief or subsequent pleadings filed, the cause was heard by a commissioner, whose report has been mentioned.

For purposes of clarification we note that at no time has there been any question as to the size of the proposed rural high school district or valuation of lands included therein, nor as to the legal sufficiency of any proposal for organization of the rural high school district, nor of any action thereon by the officials of Lincoln county, nor of any subsequent action pertaining to the calling of the election to vote on establishment of the district, further than that proceedings after attempted withdrawal of consent by the board of county commissioners of Mitchell county, are a nullity. As has been indicated, the questions of fact originally presented by the pleadings no longer concern us for the reason the state admits the findings of the commissioner are supported by the evidence. We have read the transcript of evidence taken before the commissioner, and without more, approve his findings of fact, pertinent parts of which are stated above. The only question remaining, and the only one discussed in the briefs, is one of law and that is whether under the circumstances the board of county commissioners of Mitchell county had power on January 2, 1945, to rescind its action of December 13, 1944, and withdraw its approval of the boundaries of the proposed rural high school district, the proper officials of Lincoln county having approved those boundaries on December 26, 1944.

The right of one who is required to consent to or approve some action and who does so, to later revoke his action or withdraw his consent or approval, has been treated in a variety of situations. It has been held that a judge who has approved an appeal bond cannot withdraw his approval (3 C. J. 1177); that after a judge or other official approves a bail bond he cannot withdraw his approval (6 C. J. 1013); that an architect may not, without good cause, withdraw his acceptance of work which must be done to his satisfaction (9 C. J. 767); and that an officer who transmits an

unconditional resignation to the authority entitled to receive it cannot later withdraw it (46 C. J. 980); although in each of the above instances, authority to a contrary effect may be found—in some cases due to peculiar facts—in some cases due to statutory provisions—and in some representing a minority view. In connection with public improvements, it has been held that a person who signs a petition for or consent to such works may, and may not, withdraw before the petition or consent has been acted upon by the proper authority (44 C. J. 1194), and in 126 A. L. R. 1031 may be found an extensive annotation on the right of a signer of a petition or remonstrance to withdraw his name.

The state's position and contention is that until the board of county commissioners of Lincoln county called an election on February 6, 1945, the board in Mitchell county had the power to rescind its action of December 13, 1944, and withdraw the consent then given. It cites but one case on that proposition, *City of Ellsworth v. Wilson,* 149 Kan. 486, 87 P. 2d 611, in which it was held that the action of a board of county commissioners in adopting a resolution for allocation of certain highway funds, did not prevent the board in a subsequent year from adopting another resolution making a different allocation. We shall not pause to review that case, but refer instead to the opinion there. In effect we held that the allocation made at a particular time was discretionary and not of such finality the board was precluded, under the circumstances there obtaining, from making a later different allocation. The decision in the above case does not determine the question now before us. The state also directs our attention to *State, ex rel., v. Dowling, et al.,* 117 Kan. 493, 232 Pac. 615; to *State, ex rel., v. Miley,* 120 Kan. 321, 243 Pac. 262; and to *State, ex rel., v. Rural High-School District,* 128 Kan. 797, 280 Pac. 892; in each of which may be found reference to and construction of the statutes pertaining to the formation of rural high school districts. We find little in these cases that bears on the question before us and nothing that could be said to be decisive.

The defendant's position and contention is that immediately upon consent of the two boards and of the two county superintendents to the boundaries of the district, those boundaries were fixed and it would require joint action to set aside the action, and that the board of county commissioners of Mitchell county was without power to withdraw its consent; that if the board had any power

to withdraw, its action was too late, for immediately after the last approval by the officers of Lincoln county on December 26, 1944, the electors commenced circulation of petitions for an election as required by the rural high school statutes. They direct our attention to *State, ex rel., v. Bentley*, 96 Kan. 344, 150 Pac. 218, wherein it was held that where the governing body of a city adopts a resolution to bring its public library under the provisions of a certain statute, it could not later rescind its action in so doing, and also to *Brown v. Arkansas City*, 135 Kan. 453, 11 P.. 2d 607, where it was held that the power of a municipal council to repeal ordinances does not apply where the ordinance has been enacted under a narrow, limited grant of authority to do a single designated thing in time and manner fixed by statute, which provided for establishment of a city court. It was there held that an implied power to rescind or repeal a finding, resolution or ordinance cannot exist unless the city had been delegated power to enact them in the first place.

In the very recent case of *Russell State Bank v. Steinle*, 159 Kan. 293, 153 P. 2d 906, it was held that the board of county commissioners was without power or authority to rescind its previous action in establishing a county court.

In *Coleman v. Miller*, 146 Kan. 390, 71 P. 2d 518, the question to be decided was the power of the lieutenant-governor, in case of tie vote, to vote on a concurrent resolution for the ratification of an amendment to the United States Constitution. The case is of interest here because of its repeated references to the settled proposition that although a legislative body may reconsider its previous action of rejection, once ratification is voted, it may not be receded from or rescinded and it has no power thereafter to withdraw its ratification.

An examination of the statute under which rural high school districts are "formed" or "established" discloses that insofar as here applicable legal electors residing in requisite territory "shall have authority to form a rural high-school district, whose boundaries shall have been approved by the county superintendent of public instruction and by the board of county commissioners of each county in which any part of such proposed district shall be situated, . . . " (G. S. 1943 Supp., 72-3501) and that when a petition signed by two-fifths of the legal electors residing in the proposed district shall be presented to the board of county commis-

sioners of the county in which the greater portion of the territory lies, reciting the boundaries of the proposed district and the approval thereof and requesting the board to call a special election to vote on establishing a rural high school, it shall be the duty of the board of county commissioners to call a special election to vote on establishing a rural high school (G. S. 1935, 72-3502). It will be observed that the statute provides two distinct steps, first, a proposal to form a district of designated boundaries which must have the approval of the county superintendent of public instruction and of the board of county commissioners of each county in which the land lies; and second, an election on the question of establishment.

Although an analogy may be drawn between the right of the signer of a petition for an election, or of a remonstrance or resignation from office, to withdraw his signature prior to the time the petition, remonstrance or resignation is acted upon by the authority to whom it is directed, and the case now presented, we think it may not be applied in the manner contended by the plaintiff when the statute is considered. When legal electors proposed a rural high school district of certain boundaries, and submitted that proposal to the several county superintendents of public instruction, and to the several boards of county commissioners, for their approval, upon approval by the last of them that phase was ended. Thereafter what remained to be done was not subject to any further action by any county superintendent of public instruction, nor to any further action by any board of county commissioners as to the boundaries of the proposed rural high school district. Thereafter, upon proper petition, the board of county commissioners of the county in which the greater portion of the territory lies, had the duty only of calling the election, and it, and no other official or board, who had given approval had any power to change the proposed boundaries, for that had previously become a finality. In what has been said, we do not deal with any question of fraud— any allegations either as to actual or legal fraud have been eliminated by the findings of the commissioner adopted by this court.

In the case before us the several officials and boards, after being unable to agree on the first proposal submitted, did agree on the second, and it was approved by the Mitchell county authorities on December 13, 1944, and by the Lincoln county authorities on December 26, 1944. When final approval was had, the legal electors

who proposed the rural high school district had fully and finally laid the groundwork for the circulation of election petitions.

We are of opinion that when the proposal was adopted by the board of county commissioners of Lincoln county on December 26, 1944, none of the officials whose approval was requisite could thereafter withdraw or rescind its action of approval.

It follows the state is not entitled to the relief sought, and that judgment should be rendered in favor of the defendants, and it is so ordered.