No. 41,319

State of Kansas, *Appellee*, v. Frank Bailey, *Appellant*.

(339 P. 2d 45)

Opinion filed May 16, 1959.

*Jack E. Dalton,* of Jetmore, argued the cause and was on the brief for the appellant.

*Paul B. Watson*, Special Assistant County Attorney, and *Walter F. Stueckemann*, County Attorney, argued the cause, and *John Anderson, Jr.*, Attorney General, was with them on the brief for appellee.

The opinion of the court was delivered by

SCHROEDER, J.: This is a criminal action in which the defendant was tried and convicted of unlawfully operating a motor vehicle upon a public highway while under the influence of intoxicating liquor.

The underlying question presented concerns the admissibility of a blood alcohol test made by the Kansas State Board of Health upon a sample of blood voluntarily given by the defendant.

At approximately 1:30 a. m., on the morning of September 15, 1957, two cars collided head-on in the north lane of U. S. Highway 156 in Jetmore, Kansas. A short time later, a car driven by the defendant, Frank Bailey (appellant), in a westerly direction collided with the rear end of the car which was proceeding west and involved in the first collision. No one was injured in either of the accidents.

The sheriff of Hodgeman County upon investigating the accident requested the defendant to undergo a blood alcohol test which necessitated the drawing of a sample of blood from his arm. The defendant consented to such a test and was taken to the Jetmore Hospital by the sheriff where a sample of the defendant's blood was drawn by a local medical doctor, placed in a test tube which in turn was placed in a cardboard carton and thereafter mailed by the State Highway Patrolman to the laboratory of the State Board of Health for blood analysis.

The report of the analysis was made September 18, 1957, and the slip prepared by the Kansas State Board of Health indicated the results of the analysis revealed blood alcohol of 0.215% by weight. The slip was signed by B. L. Glendening, Ph. D.

The defendant waived arraignment, pleaded not guilty and was tried to a jury which returned a verdict of guilty on the 13th day of May, 1958.

To facilitate answering the questions raised by the appellant some material evidence not directly attacked will be reviewed.

Darrell Wayne Bloodworth, owner of the vehicle which was struck by the defendant, was called as a witness for the State. His testimony disclosed that the defendant approached in his vehicle

"from the East going West pretty fast." He described how the defendant looked as follows: "His appearance to me was that he had been drinking."

C. C. Jones, sheriff of Hodgeman County, testified that he saw the defendant at the scene of the accident and had a conversation with him. He observed the actions of the defendant and how he then looked, and testified: "He was very unsteady on his feet and his speech was thick and showed the effect of alcohol." He further related he could smell intoxicants on the defendant and stated: "My opinion is that he was under the influence of intoxicating liquor."

Don Minerd, a Kansas State Highway Patrol Officer, called as a witness for the State, responded to a call concerning the accident at Jetmore just west of the intersection of U. S. Highways 283 and 156. He related the defendant produced his driver's license but did not give a clear account of the accident. He asked the defendant what he had been drinking, to which the defendant replied: "Been drinking beer." Concerning the defendant's behavior he testified: "His walk was unsteady. His speech was slurred or thick, and there was a strong odor of alcohol on his breath." The witness stated in his opinion the defendant was under the influence of intoxicating liquor. On cross examination he testified:

"Q. Now, just what do you mean when you state it's your opinion that he was under the influence of intoxicating liquor?

"A. Unsteady on his feet, odor on his breath, speech fuzzy-slurred."

The record does not disclose that objection was made to any of the foregoing testimony.

The testimony of Dr. Glendening, the principal chemist for the laboratory division of the Kansas State Board of Health, is the subject of the controversy in this lawsuit and will be dealt with fully later in this opinion.

In fairness to the defendant it should be disclosed that three witnesses called on his behalf testified that he was not under the influence of intoxicating liquor. Willis J. Erikson, who operated a service station on U. S. Highway 156 at the point where the accident occurred, testified that the defendant walked and talked in a normal manner and that he did not smell anything on the defendant's breath. Dr. A. M. Shelton, a licensed physician and surgeon, and the local county health officer, who drew the blood for the pur-

poses of analysis from the defendant on the early morning of September 15, 1957, testified:

"I think that he would probably have a high tolerance for alcohol. I think he could probably drink you and I under the table, because he's younger, probably in better physical condition, and then, he possibly has had an opportunity to drink more than we have."

When asked concerning whether in his opinion the defendant was under the influence of intoxicating liquor, the witness testified:

"Well, he didn't seem to be—oh, at the time I saw him was in the morning hours. He didn't seem to be under the influence of intoxicating liquor, at that time. He was cooperative."

Mildred Law, a nurse's aide on duty in the hospital who admitted the defendant in the early morning of September 15, 1957, testified that the defendant walked straight, his speech appeared to be normal and that he was in full possession of his mental faculties. In her opinion the defendant was not drunk and she did not smell or detect any signs of liquor on his breath.

The appellant first attacks the admission of the blood test into evidence on what he denominates a violation of the "best evidence rule."

Dr. Glendening testified it was one of his duties to examine blood for alcoholic content in the laboratory division of the Kansas State Board of Health. He related that sometimes he made the tests but more often it was done by one of the assistants; that the entire procedure was carried out under his supervision although he may not be present every minute of the time. He testified that Miss Vorse did the analysis in this particular case and that the procedure takes an hour or two.

It is the appellant's contention that it was necessary to establish a complete chain of evidence, tracing the possession of the blood sample to the final conclusion of its testing and that to do so it was necessary for the State to produce Miss Vorse, who made the analysis, as a witness at the trial. (Citing *State, ex rel., v. Dowling et al.,* 117 Kan. 493, 232 Pac. 615; 21 A. L. R. 2d 1220, § 4; and *Campbell v. Brown,* 85 Kan. 527, 117 Pac. 1010.) It is argued that by permitting Dr. Glendening to introduce the exhibit concerning the blood test and testify therefrom, the defendant was denied a fair opportunity to cross examine in connection with the analysis.

We find no merit in this contention of the appellant. In reality the objection does not go to the chain of possession or to the

identity of the blood sample. The analysis was conducted under the supervision and control of Dr. Glendening and as such became his own analysis. He was the proper party to testify concerning the result of the analysis. There is no showing that any part of the testimony of Dr. Glendening was based upon information imparted to him by his assistant, or that the appellant at any time objected to any of his testimony on the ground that it was in violation of the hearsay rule.

The appellant next contends that it was error for the trial court to refuse to strike the testimony of Dr. Glendening and to refuse to instruct the jury to disregard such testimony when it became apparent that the test conducted was not a specific test for blood alcohol.

G. S. 1957 Supp., 8-1005, insofar as material herein, provides:

"Any criminal prosecution for the violation of the laws of this state relating to driving of a motor vehicle while under the influence of intoxicating liquor, . . . evidence of the *amount of alcohol in the defendant's blood at the time alleged, as shown by chemical analysis* of the defendant's blood, urine, breath or other bodily substance may be admitted, and shall give rise to the following presumptions:

"(*a*) If there was at that time less than 0.15 percent by weight of alcohol in the defendant's blood, it shall be presumed that the defendant was not under the influence of intoxicating liquor;

"(*b*) If there was at that time 0.15 percent or more by weight of alcohol in the defendant's blood, it shall be presumed that the defendant was under the influence of intoxicating liquor." (Emphasis added.)

After Dr. Glendening testified from the analysis concerning alcohol content of 0.215% by weight in the defendant's blood, he was cross examined and testified as follows:

"Q. What type of alcohol were you testing for?
"A. In the actual test we test for *reducing substances which are presumed to be alcohol, unless we have indications that it is something else.*

. . . . . . . . . . . . . .

"Q. What are reducing substances?
"A. It could be other materials which would reduce the dichromate.
"Q. Can your tests positively state that it is alcohol, or, only state that it is a certain percentage of these compounds that would indicate alcohol?
"A. The latter would be more correct.
"Q. In other words, you would have to know before the vial came in that they wanted blood alcohol before you could take these various tests through reducing compounds, and determine your percentage by weight, is that correct?
"A. Essentially, yes.
"Q. Then, when you complete your test, the report which says there is

a percentage of alcohol is based not on what is the true percentage of alcohol, but, what the percentage is of these other various compounds that would indicate ethyl alcohol, is that correct?

"A. Yes, sir.

"Q. Then, isn't it a fact, Dr. Glendening, that actually a report of percentage of alcohol is not a report of percentage of alcohol, but, merely a report of these other compounds that would merely indicate alcohol?

"A. *I wouldn't say, 'other compounds', because it might be alcohol.*

"Q. Do you have any specific tests that, not knowing what the blood was there for, do you have any specific tests you could take and when you got through, not saying it's some of these reducing compounds, but, a test that would say, 'This is actually ethyl alcohol'?

"A. It would require a larger sample than we normally get to do that.

"Q. There are tests?

"A. Yes.

"Q. But, you don't perform those tests in these blood tests? You don't perform these to determine how much ethel alcohol there is, but, merely these other percentages, is that correct?

"A. We use the method of the U. S. Army for blood alcohol examination.

"Q. But, as I understand you to state, you couldn't state it is actually alcohol?

"A. *You can't state it is all alcohol without doing some other tests.*

"Q. Now, what is the type of alcohol in intoxicating liquors?

"A. It's ethyl alcohol.

"Q. And, is your test primarily to determine whether there is any ethel groups in the blood?

"A. *No, sir; we test for reducing substances.*

"Q. Now, what about—Do practically all of the intakes of humans contain organic compounds?

"A. Most of them.

"Q. What about sugar?

"A. Sugar is organic.

"Q. And, is there sugar in beer?

"A. I suppose there might be a little.

"Q. If I understood correctly, alcohol is distinguished by this 'O H' group?

"A. That's one of the characteristics.

"Q. Without that it wouldn't be alcohol?

"A. No, sir.

"Q. And, is sugar contained in this 'O H' group?

"A. Yes, sir."

On re-direct examination the doctor testified:

"It is possible that within the percentages as stated in the report in this blood alcohol analysis that there could be some of these other reducing compounds included within that percentage group.

"Q. Could you state what any of these other reducing compounds might be?

"A. The only thing that we ever experience that gives us trouble are for-

maldehyde in case of where a body has been contaminated with embalming fluid, and there's a slight rise in some pathological conditions where acetone may be found in the blood as in cases of severe diabetes. However, these percentages never run this high except in cases of formaldehyde where it may be exceedingly high.

"Q. *Would these other reducing compounds have any appreciable effect upon your results?*

"A. *No, not appreciable.*"

The trial court refused to strike the testimony of Dr. Glendening and admitted an exhibit disclosing the result of the blood test into evidence. After the defendant presented his evidence in the court below, the jury was instructed, and among the instructions was No. 4. It quoted the statute, as above, then continued as follows:

"General Statutes 1955, supplement, paragraph 8, section 1006, in part, provides: . . . 'The foregoing provisions of section 1 (8-1005) shall not be construed as limiting the introduction of any other competent evidence bearing upon the question of whether or not the defendant was under the influence of intoxicating liquor.'

"This presumption is not conclusive, but may be considered by you along with all the other evidence in the case, and if, upon consideration of all the evidence, you entertain a reasonable doubt as to whether or not the defendant was under the influence of intoxicating liquor, you must not find him guilty."

We shall treat the appellant's assignments of error concerning ( *a* ) the admission of Dr. Glendening's testimony and the blood test; ( *b* ) the overruling of appellant's motion for a directed verdict; ( *c* ) the giving of instruction No. 4; and ( *d* ) the overruling of appellant's motion for a new trial, together, since essentially they involve the same point.

It is argued that G. S. 1957 Supp., 8-1005, permits only evidence of the *amount of alcohol* in the defendant's blood as shown by chemical analysis of the defendant's blood, and that evidence of *reducing substances* is insufficient to comply with the statute. If the chemical analysis shows only reducing substances which are *presumed* to be alcohol, then a result of such analysis showing more than 0.15% by weight of reducing substances under the statute gives rise to a presumption that the defendant is under the influence of intoxicating liquor. This is a presumption upon a presumption which is insufficient to meet the burden of proof resting upon the state in a criminal action. ( *State v. Ragland,* 170 Kan. 346, 226 P. 2d 251.)

The force of the foregoing argument cannot be minimized.

Upon the foregoing argument the appellant contends a presumption of innocence is changed to a presumption of guilt. This is

incorrect. The presumption created by the statute is merely a rebuttable presumption that the defendant was under the influence of intoxicating liquor. It is not a presumption that the defendant is guilty of the offense for which he is charged. The offense of unlawfully driving a motor vehicle upon a public highway while under the influence of intoxicating liquor is comprised of several elements, each of which must be proved beyond a reasonable doubt by the State. The State must prove at the time in question (1) the defendant *was operating* the motor vehicle in question; (2) that the instrumentality which the defendant was operating was a *motor vehicle* within the contemplation of such term in the statute; (3) that the defendant was operating such vehicle *on a public highway;* and (4) that he was *under the influence* of intoxicating liquor. Even with the assistance of the statutory presumption concerning the fourth element, the State was obligated to sustain its burden of proof beyond a reasonable doubt as to each of the elements before a jury could find the defendant guilty. As to the fourth element the last paragraph of instruction No. 4 correctly stated the law.

Here the constitutionality of the legislative act pursuant to which the blood test was made is not under attack. Our question is simply whether the result of a quantitative chemical analysis of a sample of blood, tested for reducing substances, is proper evidence to show blood alcohol content.

One of the generally recognized standard methods of testing for blood alcohol content in the United States, and regarded as accurate to a reasonable degree, is the quantitative chemical analysis for reducing substances in the blood. (See: 1 Gray on Attorneys' Textbook of Medicine [3rd Ed.], § 59.06, pp. 621 and 622.) Yet our problem is perplexed by the record here presented. It is quite apparent counsel for the State and Dr. Glendening were unprepared to properly defend the use of this particular blood test as a method for determining blood alcohol content.

The trial court no doubt accepted the concluding statements of Dr. Glendening on re-direct examination as controlling his entire testimony. This testimony was, in effect, that reducing compounds, other than ethyl alcohol, if present at all would have no appreciable effect upon the results of the test. On this basis the result of the blood test and the testimony of Dr. Glendening was properly received in evidence.

Obviously, if the presence of other compounds has no appreciable effect on the results of a chemical analysis of blood for reducing

substances to determine the blood alcohol content, it is *not a presumption* which gives rise to the presence of alcohol in the blood, but a reasonably accurate *laboratory conclusion* based upon such chemical analysis that shows the quantity of alcohol in the blood. By this approach appellant's argument that a presumption is founded upon a presumption dissipates.

The law-making body in its legislative wisdom realized the perplexities involved concerning the testing of a sample of blood to ascertain whether an individual was or was not under the influence of intoxicating liquor. It ascribed some intelligence to the triers of the facts. By the provisions of G. S. 1957 Supp., 8-1006, the statutory presumption specified in the previous section was not to be construed as limiting the introduction of any other competent evidence bearing upon the question of whether or not the defendant was under the influence of intoxicating liquor. In other words, a blood test in and of itself may be insufficient and require other evidence to give it proper perspective in making a determination of the ultimate fact concerning intoxication. The trial court properly instructed on this point in instruction No. 4.

We feel compelled to hold that the trial court properly construed the testimony of Dr. Glendening and properly ruled on the questions presented in the trial of the case.

In the instant case the jury heard all the evidence. We cannot say the jurors failed to give proper consideration and credence to the result of the blood test or the testimony of Dr. Glendening. Wholly aside from the blood test and the testimony given by Dr. Glendening, the State made out a *prima facie* case against the defendant at the trial. Therefore, even if it can be said that it was error to admit the results of the blood test in evidence, it was merely cumulative and cannot be said to have affected the substantial rights of the accused. (G. S. 1949, 62-1718; *State v. Radke,* 168 Kan. 334, 212 P. 2d 296; and *State v. Linville,* 150 Kan. 617, 95 P. 2d 332.)

In conclusion we hold the trial court did not commit reversible error in any of the particulars specified. The judgment is affirmed.