[No. 31424. Department Two. March 15, 1951.]

THE STATE OF WASHINGTON, *Respondent,* v. CHESTER O. GREEN, *Appellant.*[1]

[1]Reported in 229 P. (2d) 318.

*Leo W. Stewart* and *H. I. Kyle,* for appellant.

*Charles O. Carroll* and *Burton S. Robbins,* for respondent.

MALLERY, J.—Shortly after 6:30 a. m., on the morning of October 16, 1949, the defendant, Chester O. Green, and his stepson Paul, who was sixteen years old, were hunting in the Mt. Peak area, some two and one-half miles from Enumclaw. Prior to the arrival of the Greens, three other hunters, Dale Ammon, Bill Semprimoznik, and Dave Smith, had entered this area and had stationed themselves about a pasture several hundred yards east of the Mt. Peak road. Dale Ammon, a boy of fifteen years, had taken up a position on the west side of a fence bordering the west edge of the pasture. He was wearing a red hat, a dark jacket, and gray trousers. Smith stationed himself about one hundred and fifty yards northeast of Dale Ammon, and testified that he could see him just before the accident occurred, due to Dale's wearing a red hat. Semprimoznik was more than four hundred yards north of Smith, and he testified that he could see Dale's red hat from his position.

The Greens entered the field to the west of the Ammon party and walked east to a point about one hundred and two feet northwest of Dale's position. At that time the sun was shining and visibility was unimpaired. The defendant saw Dale, mistook him for a bear and shot him. We give his version of what occurred, though the jury, of course, was not bound to accept any or all of it:

"A. Paul saw the object first and tapped me on the shoulder and said 'Dad, there is something,' so we stood and looked. . . . it was sitting and crouching down. It's head was moving and every so often I could see a flare of white. I was standing behind at about a forty-five degree

angle. . . . . It must have been altogether five minutes, anyhow. . . . . I raised my gun and pulled the hammer back on it and took a bead on it. . . . . I looked down through and was not sure so I laid my gun down. . . . I studied it some more."

At this point the defendant testified that he and his stepson conferred briefly as to what the object was, and that he decided that it was a bear. He then raised his gun, fired, and the object disappeared. His testimony continues:

"Q. When you got to the east side of him and 15 or 18 feet away what did you see? A. I saw the body. Q. Then what happened? A. Well, I went all to pieces is all. Q. What do you recall doing? A. The only thing I recall is giving Paul the car key and sending him back for the car and he picked me up."

Neither the defendant nor his stepson went up to the body of Dale Ammon to ascertain whether or not he could be helped. On the contrary, both started to run in opposite directions. When the shot was fired, both Semprimoznik and Smith stopped hunting and started across the field. Semprimoznik noticed Paul Green running, and being curious about the shot, ran after the boy and caught him. He was permitted to testify, over an objection that it was hearsay, that Paul Green told him, in response to a query as to what they were shooting at, that they had a "three-point buck." Semprimoznik then went to meet Smith, and together they went back to where Dale had been. It was at that time that they saw what had happened. The authorities were notified shortly thereafter.

The defendant was charged with the crime of manslaughter and pleaded not guilty.

A trial to a jury resulted in a verdict of guilty. After denying a motion for a new trial, the defendant was sentenced to a year in the county jail. He appeals, assigning four errors in the court below.

■ Assignments three and four can not be considered by this court. They relate to requested instructions, and to instructions alleged to be erroneous. However, they are not set out in full in the brief, and, under Rule of Supreme Court 16, § 5 (presently Rule of Supreme Court 42 (1) (f), 34A

Wn. (2d) 45), can not be reviewed. *State v. Meyer,* 37 Wn. (2d) 759, 226 P. (2d) 204; *DeLonge v. Richfield Oil Corp.,* 35 Wn. (2d) 803, 215 P. (2d) 701.

Assignment one challenges the sufficiency of the evidence to take the case to the jury. The appellant was, by actual measurement, one hundred and two feet from Dale Ammon, when he fired the fatal shot. Even if we concede that Dale did not have on his red hat when the shot was fired, as the appellant contends, still it was broad daylight, and appellant testified that his eyes were good. His view of Dale was obscured only by grass. The testimony is in conflict, but there is some testimony that the grass was not more than six or eight inches high.

A hunter must exercise reasonable care in identifying a target. If he is in doubt, he must not shoot. See 63 A. L. R. 1232 for a discussion of criminal responsibility for shooting one mistaken for an animal. The prosecution made a *prima facie* case from which the jury could find the appellant lacking in the care and prudence required of a hunter.

The second assignment is directed at the court's ruling in allowing Semprimoznik to testify as to what Paul Green told him, as heretofore set out, in the absence of the appellant. The trial judge admitted this evidence as part of the *res gestae* based on its finding that it was a spontaneous statement.

Of course, the statement was partly true and partly false. It was true as to who had fired the fatal shot, it was untrue as to the three-point buck. It was incumbent upon the prosecution to prove who had fired the fatal shot. This evidence tended to prove it and the true part of the statement did not become unavailable to the state because the statement was not true in its entirety.

The appellant contends that the statement does not meet the requirements of *Beck v. Dye,* 200 Wash. 1, 92 P. (2d) 1113, 127 A. L. R. 1022, to be admissible under the *res gestae* rule. We think otherwise. Applying the six requirements as set out in that case, we find (1) the declaration related to the main event, *viz.:* the firing of the shot; (2) it was not a narration of a completed past affair; (3) it did not

purport to express an opinion, but was a statement of fact; (4) it was spontaneous, as the court found; (5) it was not the result of deliberation; and (6) it was made by one who had witnessed the act.

It is now contended that, since Smith had his rifle in his hand, Paul Green was under duress and the statement was not spontaneous, as the court had found it to be. That objection was not raised in the court below, nor do we find anything in the record suggesting that he felt himself to be threatened with violence. We will not now act upon the assumption that this afterthought is true.

What the appellant did contend, in the trial below, was that the statement was inadmissible because it was hearsay. As to this the American Law Institute Model Code of Evidence, Rule 512, at page 262, states:

"Evidence of a hearsay statement is admissible if the judge finds that the hearsay statement was made (a) while the declarant was perceiving the event or condition which the statement narrates or describes or explains, or immediately thereafter; or (b) while the declarant was under the stress of a nervous excitement caused by his perception of the event or condition which the statement narrates or describes or explains."

Appellant strenuously urges the prejudicial effect of the statement upon the jury, and couples it with the proposition that it was not necessary to the state's case, because he had never denied firing the fatal shot, either before or during the trial. He contends the sole issue for the court was as to the degree of care used. The answer to this is that by his plea of not guilty, appellant imposed upon the state the duty of proving all the elements of the crime charged. It was, therefore, incumbent upon the state to prove the appellant had fired the fatal shot and it had the right to do so by any and all competent evidence available, even though the prosecutor had reason to believe the appellant would not deny it.

The judgment is affirmed.

SCHWELLENBACH, C. J., ROBINSON, GRADY and HAMLEY, JJ., concur.