[No. 34609. Department Two. December 26, 1958.]

THE CITY OF SEATTLE, *Respondent,* v. HAROLD S. BRYAN, *Appellant.*[1]

[1]Reported in 333 P. (2d) 680.

*P. R. McIntosh* and *Wm. S. Lewis,* for appellant.

*A. C. Van Soelen, Thomas J. Owens,* and *C. V. Hoard,* for respondent.

Rosellini, J.—The defendant was charged with driving while under the influence of or affected by the use of intoxicants and with reckless driving. A jury found him guilty of the first charge but innocent of the second.

All of the assignments of error pertain to the admission of evidence and the giving of an instruction regarding a breath test for alcohol content of the blood, known as the Harger test, to which the defendant had voluntarily submitted when he was taken to the police station on the night of his arrest. It is not contended that the testimony of the arresting officer, who had formed the opinion that the defendant was under the influence of alcohol when he questioned him in his automobile, was insufficient to sustain the conviction. However, since the result of the Harger test

was strongly corroborative of the officer's testimony and undoubtedly influenced the jury in its verdict, a new trial is in order if there is any merit in the objections which the defendant raises in this court.

The probative value of chemical tests for alcohol content of the blood has been recognized by the legislature of this state. RCW 46.56.010 provides:

". . . In any criminal prosecution for a violation of the provisions of this section relating to driving a vehicle while under the influence of intoxicating liquor, the amount of alcohol in the defendant's blood at the time alleged as shown by chemical analysis of the defendant's blood, urine, breath, or other bodily substance shall give rise to the following presumptions: . . .

"If there was at that time 0.15 percent or more by weight of alcohol in the defendant's blood, it shall be presumed that the defendant was under the influence of intoxicating liquor.

"The foregoing provisions of this section shall not be construed as limiting the introduction of any other competent evidence bearing upon the question whether or not the defendant was under the influence of intoxicating liquor. . . ."

Seattle had adopted the language of this statute in an ordinance under which the defendant was charged. The constitutionality of these enactments is not questioned on this appeal. Neither does the appellant question that, if properly performed, the Harger test is an accurate method of determining the alcohol content of a person's blood.[2] These questions are not before the court and we voice no opinion regarding them.

The state produced one expert, Dr. Loomis, a professor of pharmacology at the University of Washington Medical School, who also is in charge of the State Toxicological Laboratory. He asserted that there is a direct relationship between the amount of alcohol in the blood and the degree of intoxication, with attendant impairment of faculties. He

---

[2] As recently as 1953, the method had some severe critics. See Gardner, Breath-Tests for Alcohol; A Sampling Study of Mechanical Evidence, 31 Tex. L. Rev. 289; and 29 Temple Law Quarterly 210.

testified that the Harger test if properly done is now generally regarded as accurate. His testimony was uncontradicted. Also uncontradicted was his testimony that no special skill or training as a chemist is required to operate the device, and that he could teach an average layman to operate it properly in two days. The chart which accompanies the device is an accurately computed table for converting the reading obtained from the test to the corresponding alcohol content reading. According to his testimony, the chemicals used in the test should be obtained from a chemist or laboratory technician and should be kept free from contamination.

Officer Porter, who administered the test to the defendant, stated that he had received his training in the use of the Harger device at the police academy and from his superiors at the police department and that it was a part of his regular duties to give such tests. He gave an account of the procedure which he followed in administering the test to the defendant and gave the result of the test, a reading of .328, as it was recorded in a journal kept for that purpose. The chemicals used by the department were obtained from a commercial laboratory, he said, and were prepared by a Mr. George Ishii, who made deliveries to the police station every week or oftener. On cross-examination, he stated that he did not know the contents of the chemicals, did not know the formula used in preparing the chart, and did not believe there was a formula.

The defendant's first assignment of error concerns the testimony of Officer Porter. While he does not question the officer's ability to perform the Harger test, he contends that his testimony as to the result of the test is hearsay, because the officer did not know of his own knowledge whether the chemicals had been properly prepared, and did not know how the chart was formulated. The defendant waived any possible error in admitting the testimony of the officer by failing to raise any objection until after the city had rested.

Aside from this fact, we fail to see wherein the officer's ignorance of the nature of the chemicals which

were furnished for his use, and his ignorance of the theory on which the conversion table was calculated, rendered his testimony regarding the procedure which he followed and the result which he obtained hearsay. The hearsay rule bars evidence of out of court utterances where it is offered to prove the truth of the matter contained therein. Hearsay evidence is excluded by the courts principally because it is not sanctioned by the oath of the person who made the offered statement and no opportunity is afforded for cross-examination. *Steel v. Johnson,* 9 Wn. (2d) 347, 115 P. (2d) 145. Officer Porter did not purport to testify to the composition of the chemicals he used or the correctness of the chart, except as he had so found in his own experiments. The fact that the officer was ignorant of matters about which he did not purport to testify does not make inadmissible his testimony regarding matters within his personal knowledge, that is, his procedure in administering the test and the result thereof.

The only argument in support of the plaintiff's contention is in the form of a quotation from a Texas case, *Hill v. State,* 158 Tex. Crim. Rep. 313, 256 S. W. (2d) 93, wherein the Texas court held that the state had failed to prove three elements which it considered essential to the admissibility of evidence of such tests: (1) Proof that the chemicals were compounded to the proper percentage for use in the machine; (2) proof that the operator and the machine were under the periodic supervision of one who has an understanding of the scientific theory of the machine; and (3) proof by a witness who was qualified to calculate and translate the reading of the machine into the percentage of alcohol in the blood.

That case is of little use to the defendant, since the rules which the Texas court laid down were based upon the testimony of an expert who had said in a prior case involving the test that these matters must be shown before the test could be relied upon as accurate. There is, in this case, testimony that the chemicals should be uncontaminated but there is no testimony that expert supervision or calculation of results is necessary. The uncontradicted testimony of

the city's expert was that the chart used is accurate and no expert supervision is needed. There is no evidence from which it could be inferred that the chemicals used were contaminated. On the contrary, Officer Porter testified that the accuracy of his test was checked by observing the displacement of water as well as the change in weight of the ascarite tube (a device which measures carbon dioxide in the subject's breath). If the two readings correspond, as they did in this case, the test has been run correctly. We see no merit in the contention that the jury should have been told to disregard as hearsay the testimony of this officer.

Error is next assigned to the refusal of the trial court to withdraw from the consideration of the jury the volunteered statement of the arresting officer:

"It was the highest Harger that I have ever heard of, highest alcohol reading. It means the person had the most alcohol in his system."

■ The defendant did not advise the court of the ground for his objection to this statement, nor does his brief contain any authority for his position that the remark should have been taken from the consideration of the jury. Error cannot be predicated upon a ruling of the court on the admission or rejection of evidence, where the court was given no reason for the objection. *State v. Estill,* 50 Wn. (2d) 245, 310 P. (2d) 885; *State v. Spangler,* 92 Wash. 636, 159 Pac. 810.

■ It is next suggested that the court erred in overruling the objection of the defendant and permitting the arresting officer to state the result of the Harger test, as told him by Officer Porter. Granting that the answer was hearsay and it was error to allow it, the error was harmless inasmuch as the result of the test was established by other competent evidence. *State v. Sedam,* 46 Wn. (2d) 725, 284 P. (2d) 292.

Finally, the defendant assigns as error the giving of an instruction to the effect that, should the jury find that the chemical analysis of the defendant's breath showed 0.15 per cent or more by weight of alcohol in his blood at the

time such sample was taken from him, it should be presumed that the defendant was under the influence of intoxicating liquor at such time.

 As we have already noted, the constitutionality of RCW 46.56.010 is not questioned. This instruction was based upon that statute, which makes a showing of 0.15 per cent or more of alcohol in the blood presumptive evidence of intoxication, and was proper under the evidence. Whether the presumption was overcome, as the defendant contends, by his own testimony that he was not under the influence of, or affected by, intoxicants at the time was a question for the jury. It is true that we have said that a presumption is not evidence and cannot be made to take the place of evidence. *Gardner v. Seymour*, 27 Wn. (2d) 802, 180 P. (2d) 564. But that rule does not prohibit the court from instructing the jury that, where certain facts have been proved, the law attaches a presumption of other facts, placing upon the party against whom the presumption arises the duty of producing rebutting evidence. None of the cases cited by the defendant so holds.

The judgment is affirmed.

HILL, C. J., DONWORTH, WEAVER, and OTT; JJ., concur.