[No. 36869.   Department Two.   September 16, 1965.]

THE STATE OF WASHINGTON, *Respondent*, v. WALLACE R. RUTHERFORD, *Appellant*.*

*Reported in 405 P.2d 719.

*Lawrence M. Ross* and *Johnson, Griffin, Boyle & Ross*, for appellant.

*John G. McCutcheon, Eugene G. Olson,* and *Joseph D. Mladinov*, for respondent.

ROSELLINI, C. J.—The appellant was charged by amended information on eight counts of fraud in the sale of securities, for which criminal penalties are prescribed in RCW 21.20.400, and was found guilty on four counts. He has appealed from the judgment and sentence entered on the verdict.

It is first contended that the trial court erred in permitting the chief of materials testing for the Air Force at Tinker Field, Oklahoma, to testify as to the results of tests performed on "Metal X," the substance about which the fraudulent representations were alleged to have been made. The evidence showed that these tests had been performed at the request of the appellant, who was endeavoring to interest the Air Force in his product and had suggested procedures to be followed in testing. Mr. Spellman, the chief of testing, was in charge of a group called the Materials Branch, which consisted of approximately 40 people—engineers and scientists, chemists, physicists, metallurgists and technicians. There was a Physical Testing Section and a Chemical Testing Section. Mr. Hopkins, who was in charge of the Physical Testing Section (under Mr. Spellman's supervision) had suffered a stroke and was unable to testify at the trial. Mr. Spellman was allowed

to testify concerning reports made to him by Mr. Hopkins and others in the laboratory.

In testifying, Mr. Spellman referred to a report which he had made at the conclusion of the tests. This report was compiled from oral and written reports made to him by Mr. Hopkins and others who had participated in the testing procedures. The appellant's contention is that his testimony as to the results of the tests is hearsay, because he did not personally conduct the tests and could not be cross-examined on the procedures followed or testify of his own knowledge concerning what was done.

Under our Uniform Business Records Act, RCW 5.45.020, the report made by Mr. Spellman was admissible. That act provides:

> A record of an act, condition or event, shall in so far as relevant, be competent evidence if the custodian or other qualified witness testifies to its identity and the mode of its preparation, and if it was made in the regular course of business, at or near the time of the act, condition or event, and if, in the opinion of the court, the sources of information, method and time of preparation were such as to justify its admission.

This act contemplates that such a record is presumptively reliable if it was made in the regular course of business and there was no apparent motive to falsify. Implicit in it is the presumption that an employee will do his duty. It does not require that the record should have been made by the person actually doing the act, but only that it should have been made in the regular course of business, under circumstances which the court finds rendered it trustworthy. In commenting on the desirability of such a rule of evidence, Professor Wigmore says:

> No doubt much should be left to the discretion of the trial Court; production [of witnesses] may be required for cross-examination, where the nature of the controversy seems to require it. But the important thing is to realize that upon principle there is no objection to regarding this situation as rendering in a given case the production of all the persons practically as impossible as in the case of death.

(4) The conclusion is, then, that *where an entry is made by one person in the regular course of business, recording an oral or written report, made to him by other persons in the regular course of business, of a transaction lying in the personal knowledge of the latter persons, there is no objection to receiving that entry under the present Exception [to the hearsay rule], verified by the testimony of the former person only, or of a superior who testifies to the regular course of business, provided the practical inconvenience of producing on the stand the numerous other persons thus concerned would in the particular case outweigh the probable utility of doing so.*

Why should not this conclusion be accepted by the Courts? Such entries are dealt with in that way in the most important undertakings of mercantile and industrial life. They are the ultimate basis of calculation, investment, and general confidence in every business enterprise. Nor does the practical impossibility of obtaining constantly and permanently the verification of every employee affect the trust that is given to such books. It would seem that expedience which the entire commercial world recognizes as safe could be sanctioned, and not discredited, by Courts of justice. When it is a mere question of whether provisional confidence can be placed in a certain class of statements, there cannot profitably and sensibly be one rule for the business world and another for the court-room. The merchant and the manufacturer must not be turned away remediless because methods in which the entire community places a just confidence are a little difficult to reconcile with technical judicial scruples on the part of the same persons who as attorneys have already employed and relied upon the same methods. In short, Courts must here cease to be pedantic and endeavor to be practical. 5 Wigmore, Evidence §1530 (3d ed. 1940).

■ And, by the same token, if the written record of the report should be admissible, as trustworthy evidence, why should not the person who made the record be permitted to testify to its contents? The appellant in this case has not given a single reason why the testimony should be considered untrustworthy and has ascribed to the witness no motive for falsification. In the light of all

the other testimony on the subject, there can be little doubt that the facts were in accord with the evidence given by this witness.

The appellant cites the cases of *Seattle v. Bryan*, 53 Wn.2d 321, 333 P.2d 680; *State v. Chemeres*, 20 Wn.2d 712, 147 P.2d 815; and *State v. Baker*, 56 Wn.2d 846, 355 P.2d 806. None of these is in point and none supports the proposition advanced by the appellant. In the first, it was held that any error in permitting the arresting officer to testify as to the results of a Harger test which he did not administer was harmless, inasmuch as the result was established by other evidence. The officer was not in charge of the administering of Harger tests, and it was not a duty of the officer who administered the tests to report to him. *State v. Chemeres, supra,* is concerned with the rules pertaining to the admission of opinions of experts and does not discuss any aspect of the question presented here; and *State v. Baker, supra,* also discusses the competency of experts but not the question whether a witness may testify concerning reports made to him in the ordinary course of business.

We conclude that the trial court did not abuse its discretion in permitting the witness to give the results of tests performed under his supervision and control, even though he did not personally conduct the tests or witness their performance.

The appellant next contends that the court improperly permitted a mining engineer to testify for the state that he was unable to locate many of the mining claims asserted by the appellant through use of the appellant's descriptions in his claims. He cites *Olympic Manganese Mining Co. v. Downing*, 156 Wash. 686, 287 Pac. 872, which holds that unless rights of a third party intervene, defects in the manner and form of a location notice will not defeat a claim. This contention is without merit. The state was not attempting to defeat any mining claim of the appellant, but to show that his representations to prospective purchasers of securities concerning the nature and extent of his claims were fraudulent. The testimony of

the engineer was relevant as bearing on the question whether his asserted claims did in fact exist. There was extensive additional evidence presented by the state tending to show that his representations to prospective purchasers grossly exaggerated the number and misrepresented the nature of his claims. For this reason, there is likewise no merit in the additional contention advanced by the appellant that the trial court should have instructed the jury that the state had failed to prove fraud in this regard.

Error is assigned to the refusal of the following instruction, requested by the appellant:

> The court has herein admitted certain evidence as to the issuance of the stop order, by the Division of Securities, Washington State Department of Licenses, on the sale of stock of the Metallo Sales and Manufacturing Company, Inc. In such regard, the jury is instructed that there is no authority under the law of the State of Washington for the issuance of such an order and the same, whether issued and served upon the defendant or not, was without legal force or effect and was not binding upon the defendant or the Metallo Sales and Manufacturing Company, Inc.

The allegations in the information with reference to this stop order were that the appellant did knowingly and feloneously conceal the material fact that such an order had been issued. There was no allegation that the order was valid or issued with statutory authority. Consequently, the validity of the order was not at issue in this action. The fact that the order had been issued, whether or not the department had statutory authority to so issue it, was a material fact of interest to prospective purchasers of securities, who would at least be put on inquiry if advised of its existence; and it was the deception of the appellant in failing to disclose his knowledge of its issuance which was alleged to be fraudulent. Since its validity was not at issue and was not material, the rejection of the proposed instruction was not prejudicial error.

The appellant next urges that the trial court improperly instructed the jury that intent need not be proved

by "direct and positive" evidence, but may be proved by circumstantial evidence. It is suggested that to instruct the jury that "positive" evidence is not necessary is to suggest that the state need not prove its charge beyond a reasonable doubt. But we do not think such a connotation is indicated. The word is used in the same sense as "direct." In Webster's New Twentieth Century Dictionary (2d ed. 1960), it is defined, *inter alia,* as follows:

1. explicitly laid down; express; direct; explicit; precise; specific; as, he told us in *positive* words; we have his *positive* declaration to the fact.

. . . .

4. beyond all doubt, qualification, or denial; undeniable; sure; incontestable; express: opposed to *circumstantial*; as, *positive* proof.

This is the sense in which the word was used in the instruction and the sense in which it was calculated to be understood. The giving of the instruction was not error.

All the remaining assignments of error, except one, pertain to instructions given by the court which are not set out in the brief. Under Rule on Appeal 43, RCW vol. 0, such assignments will not be considered. *Rank v. Alaska S.S. Co.,* 45 Wn.2d 337, 274 P.2d 583.

■ The final contention of the appellant is that the trial court committed prejudicial error in permitting the jury to deliberate some 72 hours after a trial lasting approximately 23 days. No authority is cited in support of this proposition. The Supreme Court will not consider an assignment of error not supported by citation of authority unless it appears on its face that the assignment is well taken. *Harvey v. Cleman,* 65 Wn.2d 853, 400 P.2d 87; *Frey v. Kent City Nursing Home, Inc.,* 62 Wn.2d 953, 385 P.2d 323. The assignment made here does not have this attribute.

The judgment is affirmed.

HILL, WEAVER, and HAMILTON, JJ., and KELLY, J. Pro Tem., concur.

November 2, 1965. Petition for rehearing denied.