[No. 37709. Department Two. February 24, 1966.]

THE STATE OF WASHINGTON, *Respondent,* v. EDWARD CHARLES BADDA, *Appellant.**

*Reported in 411 P.2d 411.

*Nicholas A. Maffeo,* for appellant (Appointed counsel for appeal).

*Charles O. Carroll* and *John S. Ludwigson,* for respondent.

HILL, J.—This is an appeal by Edward Badda from his second conviction of participation in the robbery of the Kenmore Lanes Bowling Alley by four men in the early morning of February 8, 1961.

On Badda's appeal from his first conviction, he was granted a new trial because of an accumulation of trial errors. The details of the crime and the identity of the confessed and alleged participants appear in the opinion on the first appeal (*State v. Badda,* 63 Wn.2d 176, 385 P.2d 859 (1963)).

As that opinion shows, Badda and Dolan McCollum had been tried together and convicted. At that trial, the only testimony connecting Badda with the robbery was that of one of the participants, Vernon Milton Hedrick, Jr., who was 17 years of age at the time of the robbery. At the second trial, Hedrick again testified, and McCollum (who had not appealed his conviction) was brought from the reformatory as a witness and also testified to Badda's participation in the robbery.

While there are two assignments of error that raise the issue as to whether the state met its burden of proof, there can be no question but that the fact of the robbery was established by evidence independent of that given by

the two accomplices; and the testimony of Hedrick and McCollum, who were participants in the robbery, was sufficient, if believed by the jury, to establish the participation of Badda therein. The jury was given the customary accomplice instruction: that they should act upon the testimony of an accomplice with great care and caution and subject it to careful examination. These assignments of error are clearly without merit.

Badda urges that his constitutional right to have compulsory process to compel the attendance of witnesses in his behalf was violated by the refusal of the presiding judge of the superior court to issue a certificate summoning an out-of-state witness.

The desired witness was Edgar Covert, who had been named with Badda and McCollum in the original information but who had been granted a separate trial. Covert testified at his trial for the same robbery with which Badda was charged that he (Covert) did not know where Badda was on the night and early morning of the robbery. On the separate trial of Covert, the jury disagreed, and the state dismissed the charges against him.

On February 11, 1964, six weeks before the date of trial (March 24), Badda's counsel asked the presiding judge of the King County Superior Court to sign a certificate to the Michigan authorities, recommending that Edgar Covert, then in Detroit, be taken into immediate custody and delivered to an officer of the state of Washington. The presiding judge at that time wrote on the proposed certificate:

> [R]efused on the ground that no showing has been made that the witness will not respond to a subpoena. There has been no showing that it is necessary to take the witness into custody and to send an officer after him.

The refusal was specifically "without prejudice to making a new request for a certificate upon a proper showing of necessity." The request was never renewed until the time of trial.

A stipulation was then prepared and, after the appellant

and his counsel had each said that it was "agreeable" to them, the trial judge said to the jury:

> The parties, ladies and gentlemen, have been confronted in this case at this particular time with a problem of having the presence of a witness desired to be called by the defendant. To avoid unnecessary delay and expense, the parties have stipulated, as follows, and I will read this stipulation to you:
>
> "That Edgar Covert's testimony at the time that he was on trial for the crime alleged in the information in this case was to the effect that Edgar Covert did not know where the Defendant Edward Badda was on the night of February 7 and the morning of February 8, 1961 [the time of the robbery]."
>
> That is the stipulation of the parties. You will take it to be evidence in the case to be considered along with and as you consider other evidence in the case.

There was no showing of any kind that Covert could have testified to anything more than that had he been present.

There was no denial of any timely request for compulsory process, nor was there any showing that Covert's absence was prejudicial to Badda's defense.

Error is assigned to allowing the witness McCollum to testify. McCollum, who had been convicted with Badda on the first trial and was serving his sentence at the Washington State Reformatory, was produced as a witness by the state. Error is claimed because his name had not been included on the list of witnesses furnished to the defendant by the state.

■ The state urges that inasmuch as Badda was being retried on the information charging both McCollum and himself with robbery, it was not necessary to endorse McCollum's name on the information as a witness, or to include it on the list furnished the defendant. For authority, the state relied on *State v. Cooper,* 26 Wn.2d 405, 417, 174 P.2d 545 (1946). In that case, the fact that two defendants were jointly charged was said to be notice to each that the other might be a witness. However, the parties were there being tried together and the holding was proper. In this case, only one of the persons charged was on trial; the named

codefendant had been convicted of the offense charged and was not subject to further trial for the offense; he was in no sense a codefendant. Under such circumstances, there was no notice to the defendant that his former codefendant was going to be a witness against him.

Our most recent extensive discussion of the statute[1] relating to notice as to witnesses is in *State v. Thompson,* 59 Wn.2d 837, 843, 370 P.2d 964 (1962),[2] where we considered the effect of a failure to comply. We there said a consideration of the cases indicates that

> compliance with the statute is not mandatory, and that, in order to constitute grounds for reversal, such a failure to comply must result in either an abuse of discretion by the trial judge or some substantial injury to the defendant.

In the instant case, when McCollum was produced as a witness, defense counsel asked for a recess to enable him to interview the witness. This he was given and, after talking with McCollum, no objection to his becoming a witness was interposed. Counsel now complains bitterly that had he known McCollum was going to testify he might have shown that McCollum was insane and not competent to testify.

This suggestion of McCollum's insanity is sheer fantasy— based on his testimony on cross-examination that his father had attempted to get him sent to a mental institution to avoid his having to go to the reformatory. Counsel has ballooned this into a charge that his client is being railroaded to the penitentiary on the testimony of an insane person.

Counsel points to nothing to indicate that there ever was

---

[1] RCW 10.37.030 provides for the prosecuting attorney to file a list of the witnesses he intends to use with the clerk and to serve a copy thereof on the defendant at the time the case is set for trial; and within 5 days thereafter the defendant is required to file a list of his witnesses and serve a copy on the prosecuting attorney. "Either party may add such additional names at any time before trial as the court may by order permit, . . ."

[2] There is a later brief discussion in *State v. Williford,* 64 Wn.2d 787, 791, 394 P.2d 371 (1964).

a hearing as to McCollum's competency, much less an adjudication of incompetency or insanity. The very case cited in defendant's brief (*State v. Moorison,* 43 Wn.2d 23, 259 P.2d 1105 (1953)), affirms a conviction based on the testimony of a person adjudicated to be insane with no showing of an adjudication of restoration to sanity, it being apparent that the witness understood the nature of an oath and was capable of giving a correct account of what he had seen and heard. The law, as set forth in that opinion, is a complete answer to the contentions of counsel here.

There is nothing in the testimony of McCollum to indicate that he was not competent to be a witness; nor was there ever any suggestion to the trial court that he was incompetent.

There is, in this case, no showing of either an abuse of discretion by the trial court, or of any substantial injury done to the defendant by the failure to list McCollum as a witness.

The defendant complains of the trial court's failure to give an instruction to the effect that if the

confessions of the co-defendants, accomplices and witnesses, McCollum and Hedrick, were obtained by inducement or threat, that the said confessions would be inadmissible against the defendant, Badda.

The short answer is that there were no confessions by either McCollum or Hedrick either offered or admitted into evidence. They both testified. Any inducements to their testimony was a matter as to which the defendant had the opportunity to inquire and did.

The defendant assigns error on the refusal of the trial court to give three requested instructions, Nos. 45, 46, and 47. These proposed instructions do not appear in the briefs, as required by Rule on Appeal 43,[3] and, hence, cannot be considered. *State v. Rutherford,* 66 Wn.2d 851, 857,

---

[3] ". . . No error assigned to the inclusion, omission, sufficiency, or insufficiency of an instruction or instructions, given or not given, will be considered unless such instruction or instructions, as the case may be, shall be set out in the brief in full. . . ." Rule 43 Errors Considered.

405 P.2d 719 (1965); *State v. Green*, 38 Wn.2d 240, 242-43, 229 P.2d 318, 23 A.L.R.2d 1397 (1951); *State v. Meyer*, 37 Wn.2d 759, 764-65, 226 P.2d 204 (1951); *State v. Snyder*, 199 Wash. 298, 303, 91 P.2d 570 (1939); *State v. Knabb*, 199 Wash. 53, 66, 90 P.2d 250 (1939); *State v. Hussey*, 188 Wash. 454, 461, 62 P.2d 1350 (1936). The state makes no point of this rule violation, but, as we said in the case last cited, "we must do so for our own protection and to enforce compliance with the rules of court."

█ Error is assigned to claimed improper conduct by the deputy prosecutor in the cross-examination of Badda. The incident, claimed to constitute "glaring" and "highly prejudicial misconduct" by the prosecutor, would seem to border on the trivial and certainly was not prejudicial.

On direct examination, Badda had testified that he had been convicted of grand larceny and robbery. On cross-examination he was asked, referring to his admitted prior convictions, "one of those involved a safe job, didn't it?" The answer was "No, it did not." The matter was pursued no further. There was no objection of any kind.

On appeal, an attempt is made to balloon this incident into an attempt to accuse the defendant of another unrelated crime, *i.e.*, safe cracking. This was neither its purpose nor effect.

Six statements of the deputy prosecutor are labeled "highly inflammatory and prejudicial." We find nothing in them which merits the adjectives applied and, apparently, five of them did not at the time seem to defense counsel to merit such castigation as no objection was made. While there was a motion for a new trial in this case, there is no suggestion that these particular statements were again brought to the trial court's attention at that time.

█ We have repeatedly held that the trial court must be given an opportunity to correct trial errors, and that claimed errors not raised in any manner before the lower court will not be considered on appeal. *State v. Jesse*, 65 Wn.2d 510, 397 P.2d 1018 (1965); *State v. Morphis*, 64 Wn.2d 260, 391 P.2d 212 (1964); *State v. Davis*, 41 Wn.2d 535, 250 P.2d 548 (1952).

If any of the statements made constituted misconduct, they clearly did not fall within the rule of *State v. Case,* 49 Wn.2d 66, 298 P.2d 500 (1956), in which we held that where the misconduct is so flagrant that no instruction could cure it, the failure to object will be excused.

■ In the one instance, where an objection was made during the argument, the deputy prosecutor had said:

> You have these instructions guaranteeing this man a fair trial. But just remember that the people of the State of Washington are entitled to a fair trial, too.

At this point, counsel for the defendant interrupted, saying:

> I am going to take exception to counsel's remark that the people of the State of Washington are entitled to a fair trial.

The objection was properly overruled. The propriety of the suggestion that both the defendant and the state are entitled to a fair trial would seem to require no citation of authority.

It is urged that it was error not to have given an instruction on alibi and that, likewise, an instruction should have been given as to the special verdict by which the jury was directed to determine whether or not the defendant was armed with a deadly weapon.

Counsel did not request an instruction on alibi or an instruction relating to the special verdict. It was never even suggested that an instruction on alibi be given, or that the reference to the special verdict in the instructions was not adequate.

■ On appeal, for the first time it is urged that further instructions were necessary. What we have hitherto said in this opinion regarding the necessity of giving the trial court an opportunity to correct claimed trial errors is, likewise, appropriate at this point. As said in *State v. Mickens,* 61 Wn.2d 83, 87, 377 P.2d 240 (1962),

> We have frequently stated that the purpose of Rule of Pleading, Practice and Procedure 51.16W, RCW Vol. 0,[4]

---

[4]"Prior to the reading of instructions to the jury, and in the absence of the jury, the trial court shall hear counsel as to exceptions to the giving of any charge to the jury and to the refusal to give any charge

dealing with the objection to a submission of instructions, is to apprise the trial court of any disputed point of law or fact and to permit correction of any error which it may feel it has made in its instructions. *State v. Hinkley,* 52 Wn. (2d) 415, 325 P. (2d) 889 (1958); *State v. Severns,* 13 Wn. (2d) 542, 125 P. (2d) 659 (1942); *State v. Peeples,* 71 Wash. 451, 129 Pac. 108 (1912).

No such opportunity of correcting the claimed errors was accorded the trial court, and the errors claimed will not be considered.

 The concluding assignments of error have to do with an embarrassing, but not prejudicial, situation.

In the verdict forms which were sent out with the jury, the words "burglary in the second degree" appeared instead of the word "robbery."

The jury announced that it had reached a verdict at about 9:50 p.m. It had been the understanding of the court, the deputy prosecutor trying the case, and apparently the defendant, that defense counsel, who lived in Renton at some considerable distance from the courthouse, had agreed that a verdict could be received in his absence. The jury was brought in, and defense counsel was not present; however, the defendant indicated a willingness to proceed without counsel. The clerk read the verdict of "guilty of the crime of burglary in the second degree" on both counts. Everyone recognized that a mistake had been made. The trial court then wrote on the verdict the words "Void, Wrong form" and signed it. A proper form of verdict was then procured and the clerk's minutes recite "Verdict form is corrected and the jury returns to the jury room at 10:05 p.m. for further deliberation."

In a few minutes, the bailiff was again informed that the jury had reached a verdict. At 10:10 p.m. the jury returned with a verdict of guilty of the crime of robbery as charged

requested in writing. Such exceptions may be either oral or in writing, and shall be noted by the court, and shall specify the paragraphs or particular parts of the charge excepted to, and the requested instructions the refusal to give which is excepted to, and shall be sufficiently specific to apprise the judge of the points of law or questions of fact in dispute."

in Count I and Count II of the information. They also returned a special verdict that the defendant was armed with a deadly weapon at the time of the commission of the offense.

The jury was polled on the verdict and then, separately, on the special verdict. Each juror acknowledged that each verdict was his verdict and the verdict of the jury. The verdict and the special verdict were then received and filed, and the jury excused from any further consideration of the case.

On the basis of the typographical error in the preparation of the verdict, the following claims are made:

1. The jury's action in finding the defendant guilty of burglary in the second degree on both counts constituted, in legal effect, an acquittal of the charge of robbery on both counts;

2. Sending the jury back to the jury room with the proper verdict form constituted a directed verdict by the trial court;

3. It also constituted putting the defendant in jeopardy a second time for the same offense;

4. The defendant was deprived of effective representation of counsel at a material part of the proceeding.

The mistake in the verdict form was discovered immediately upon the reading of the verdict and before the jury was polled. That verdict was never filed, but was marked "Void" by the trial judge. The necessary steps were immediately taken to permit the jury to again consider their verdict.

If a mistake of this character, timely discovered and corrected, could have any of the four results claimed for it, then Beadle Bumble's frequently quoted description of the law would be entirely accurate.

In *Beglinger v. Shield*, 164 Wash. 147, 2 P.2d 681 (1931), a jury had intended to bring in a verdict against two defendants for $10,000 and against a third party, an insurance company for $5,000 because that amount was the limit of its liability. In legal effect, the verdict, as rendered, was for $5,000 against all defendants. A colloquy developed

between the jurors and the court after the verdict was read, but before it was received and filed, which made clear that the verdict did not coincide with the intention of the jury. Without taking any steps to have the verdict corrected, it was filed and the jury discharged. On an appeal to this court, we said:

> Up to the time of the colloquy, the jury had not been discharged, nor had the verdict been received or filed. The verdict had merely been read. The trial judge apparently was of the opinion that he was powerless to have the jury correct the verdict. In this he was in error. Until a verdict is received and filed for record, the trial court may send the jury back to consider and clarify or correct mistakes appearing on the face of the verdict.

> "As long as the jurors, under the direction of the court, exercised according to law, have the case in their hands, it is within their province to change or modify the verdict." *Bino v. Veenhuizen,* 141 Wash. 18, 250 Pac. 450, 49 A.L.R. 1297.

> See, also, *Gosslee v. Seattle,* 132 Wash. 1, 231 Pac. 4.

> But after a verdict has been received and recorded and the jury discharged, it can no longer function as a jury. (p. 152)

The court cited and quoted the *Beglinger* case in *Haney v. Cheatham,* 8 Wn.2d 310, 326, 111 P.2d 1003 (1941), in support of its holding that the trial court had a right to send the jury back to consider further the verdict until such time as the verdict had been received and filed. The court there pointed out:

> The statute is a sufficient answer to any question as to the right of the court to ascertain whether a verdict submitted to it expresses the true intent of the jury and the right to require the jury to return to the jury room to reconsider a defective verdict and bring in a proper verdict.

> "If the verdict be informal or insufficient, it may be corrected by the jury under the advice of the court, or the jury may again be sent out." Rem. Rev. Stat., § 360 [P.C. § 8522].[5]

---

[5] Presently RCW 4.44.400.

"When the verdict is given, and is such as the court may receive, and if . . . the jury be not again sent out, the clerk shall file the verdict. The verdict is then complete. . . ." Rem. Rev. Stat., § 361 [P.C. § 8523].[6]

It is recognized that the statutes cited have to do with civil cases, but our statutes on criminal procedure prescribe that "the trial shall be conducted in the same manner as in civil actions." RCW 10.46.070. In a much earlier criminal case (*State v. Dericho*, 107 Wash. 468, 470, 182 Pac. 597 (1919)), we said:

The third contention, that the court erred in refusing to accept an incomplete verdict, and in sending the jury out a second time to find a verdict upon the issue as to a former conviction, is also without merit.

"The rule is well settled that the court may, with proper instructions, recommit a verdict to the jury for their reconsideration, where the verdict which they have rendered is not in the proper form, where it is insufficient in substance, not responsive to or covering the issues or instructions, or is otherwise defective . . ." 38 Cyc. 1893, and cases there cited.

The first verdict here was "not responsive to or covering the issues or instructions." In the much earlier case of *State v. Moran*, 46 Wash. 596, 601, 90 Pac. 1044 (1907), we said:

[I]t seems to have been apparent that an error was made in the name of the defendant sought by the jury to be returned as guilty.

The jury was asked to, and did, retire and correct the verdict. The court said in that case, as we can say in this "We can find nothing in the action of the court that infringed any substantial right of the defendant."

It is contended that the absence of defendant's counsel at the time the jury returned its verdict, deprived the defendant of the benefit of counsel at a critical stage of the proceedings.

No authority is cited to support this contention other than the usual right-to-counsel cases; none of those cited

---

[6]Presently RCW 4.44.460.

are concerned with the reception of the verdict. Our research on reception-of-verdict cases fails to disclose any case in which a new trial was granted because of the voluntary absence of counsel.

 Counsel insists that he never said that he did not want to be present when the verdict was reached. On the other hand, he apparently never told anybody that he did. He says that he was at his home in Renton, but does not suggest that he had ever made any arrangements with the bailiff or any other person to notify him when the jury reported that they had reached a verdict. It is the attorney's responsibility to attend on the court, and not the court's duty to wait on the attorney under such circumstances. His absence was entirely voluntary. What "voluntary" means was emphasized in *Newagon v. Swope,* 183 F.2d 340, 341 (9th Cir. 1950), where the court said:

> The absence of counsel when it was their duty to attend, unless their presence was waived by their client, under the then existing circumstances, unexplained by any evidence, cannot be defined by any word other than voluntary. There is no evidence that counsel were detained by any circumstance beyond their control. In view of the fact that they were absent without suggestion of the court, without showing of duress or restraint of any character, their absence could have been only purely voluntary, of their own free will, of their own volition, unconstrained by extraneous force or influence. In the absence of averment or proof to the contrary, what they did must have been freely and willingly done. Their absence, being voluntary, therefore, it could not deprive the court of jurisdiction to proceed.

 The cases hold, with great unanimity, that a defendant may waive the presence of his attorney at the reception of the verdict. In *Lovvorn v. Johnston,* 118 F.2d 704 (9th Cir. 1941), many cases are cited in support of that proposition, including the Washington case of *State v. Hardung,* 161 Wash. 379, 297 Pac. 167 (1931).

The cases also hold that the voluntary absence of defense counsel when the verdict is received, even if there is no

waiver, does not deprive the defendant of any constitutional right.

In *Newagon v. Swope, supra,* the appellant contended, as defendant does here:

> that absence of his attorneys at the time the verdict was returned deprived him of aid of counsel at a vital stage of the proceedings, in violation of that provision of the Sixth Amendment of the United States Constitution guaranteeing an accused the right "to have the Assistance of Counsel for his defense" . . . . (p. 340)

This contention was answered in these words:

> We think that to say that the courts must cease to function, indeed, are without jurisdiction to proceed further, until they search for, seek out and bring in counsel whose duty it is to be in court, and who by their own volition are absent, is to indulge in over-meticulous nicety of construction of the constitutional provision. (p. 341)

Counsel does not suggest what he could have done for the defendant, except to make the same objections he has made here, and which we find to be without merit.

The trial court properly handled the situation at that time. The correction of the apparent error in the verdict[7] in no wise infringed any right of the defendant, constitutional or otherwise. The absence of defense counsel was waived, and, even if it had not been, the court did not err in proceeding to receive the verdict; and the absence of counsel did not violate any constitutional right of the defendant or in any way injure or prejudice him.

Having considered at too great a length all of the reasons the ingenuity and resourcefulness of defense counsel could dredge up on behalf of the defendant Badda, some of them of "over-meticulous nicety," we conclude that there is no prejudicial error in the record, and the judgment and sentence[8] appealed from should be and are affirmed.

---

[7]Incidentally, this court sees no reason why the state should continue to refuse to furnish defense counsel with verdict forms. If that were done, defense counsel would have the responsibility of objecting to defects or errors, and a failure to do so would definitely limit any attempt to capitalize on errors invited by remaining silent.

[8]The information charging Badda with armed robbery is dated

ROSELLINI, C. J., FINLEY, WEAVER, and HAMILTON, JJ., concur.

April 21, 1966. Petition for rehearing denied.

August 29, 1961. There have been two trials and two appeals, the first of which resulted in a new trial, and the second of which cannot be said to be frivolous. He will have spent almost 4 years and a half in jail between the time of his arrest and the time of his commitment to a penal institution. While the sentence provides that the 20-year sentences on each count are to run concurrently and that the defendant is to be credited with time spent in confinement since the filing of the charges, it seems to this court that the Board of Prison Terms and Paroles might well take into account, in fixing the minimum term he is to serve, that an individual should not be penalized for asserting his constitutional right to a fair trial, or trials, by a jury of his peers.