510 P.2d 1079

**STATE of New Mexico, Plaintiff-Appellee,**

v.

**Dave TRUJILLO, Defendant-Appellant.**

**No. 1094.**

Court of Appeals of New Mexico.

May 16, 1973.

Thomas B. Root, Albuquerque, for defendant-appellant.

David L. Norvell, Atty. Gen., Randolph B. Felker, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

## OPINION

WOOD, Chief Judge.

Defendant was convicted of homicide by vehicle while either driving under the influence of intoxicating liquor or narcotic drugs, or reckless driving. Sections 64–22–1, 64–22–2 and 64–22–3, N.M.S.A.1953 (2d Repl.Vol. 9, pt. 2). His appeal raises issues as to: (1) the taking of a blood sample; (2) the instruction concerning the results of a test of the blood; and (3) the failure to instruct on a lesser included offense.

### Taking of the blood sample.

Defendant was driving a vehicle which was involved in an automobile accident. An investigating officer testified that immediately after the accident defendant had a strong alcoholic smell to his breath. A bottle of wine "about half gone" was observed on "the left front floor board" of defendant's car "down by the pedals on the driver's side."

Defendant was taken to the hospital. At the hospital defendant was advised of his rights and placed under arrest for driving while intoxicated, reckless driving and for failure to have a driver's license. The officer read the advice of rights from a card he carried. The officer stated he asked defendant if he understood his rights and if he wanted to talk about the accident. According to the officer, defendant stated he understood his rights "and would talk to me." According to the officer, defendant did not remember the accident, but told the officer he had " '[a] couple beers' " before the accident.

The officer testified that he asked defendant if he was aware of New Mexico's implied consent law, see §§ 64–22–2.4 to 64–22–2.12, N.M.S.A.1953 (2d Repl.Vol. 9, pt. 2), and requested defendant to take a blood alcohol test. " * * * He said he knew about the implied consent. I said if he refused to take it it could mean automatic revocation for a year. He said he knew this and would take the blood test."

The person who drew the blood sample from defendant testified that defendant consented to the taking of the blood and signed his name on a form indicating that consent. This witness also testified such consent was necessary before he could take the blood sample.

■ There is, of course, conflicting evidence, but our review considers the evidence in the light most favorable to support the verdict. State v. Gregg, 83 N.M. 397, 492 P.2d 1260 (Ct.App.1972).

■ Defendant contends his blood could not have been constitutionally taken apart from the implied consent law. We need not decide this question; however, see Schmerber v. California, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966). The validity of taking the blood sample, and the propriety of admitting the results of tests on that blood, in this case, must be decided under our implied consent law. This is so because the jury was instructed as to the statutory presumptions based on the test of the blood. Such an instruction was authorized only if the test was "performed pursuant to the Implied Consent Act." Section 64–22–2.10, supra.

■ Defendant asserts that he did not consent to the taking of a sample of his blood. There is substantial evidence that he did consent. Even if he had not expressly consented, the evidence is undisputed that he was the operator of the car.

Section 64–22–2.6, supra, provides that a "* * * person who operates a motor vehicle within this state shall be deemed to have given consent . . . to a chemical test . . . of his . . . blood for the purpose of determining the alcoholic content of his blood. * * *"

█ Defendant claims it was unconstitutional to draw his blood while he was unconscious or incapable of refusing. The evidence, reviewed above indicates defendant was not unconscious and supports the inference that defendant was capable of refusing. But even if defendant were in such a condition, § 64–22–2.8, supra, provides that a person who is unconscious or in a condition rendering him incapable of refusing to submit to a test, shall not be deemed to have withdrawn the consent implied by operating a vehicle. Defendant asserts § 64–22–2.8, supra, denies him equal protection of the law. It does not. This provision classifies certain persons on the basis of their condition, but the classification has a rational basis and is not discriminatory. In Re McCain, 84 N.M. 657, 506 P.2d 1204 (1973).

The implied consent law may be applied to a person "* * * if arrested for any offense arising out of the acts alleged to have been committed while the person was driving or in actual physical control of a motor vehicle while under the influence of an intoxicating liquor." Section 64–22–2.-6(A), supra. Defendant challenges the validity of his arrest. He claims it was illegal because the officer did not have a warrant.

█ A police officer may arrest without a warrant if the circumstances would warrant a reasonable person in believing that an offense had been committed by the person whom he then arrests. State v. Barton, 79 N.M. 70, 439 P.2d 719 (1968) and cases therein cited.

█ Defendant was arrested for driving while intoxicated. He had a strong smell of liquor on his breath immediately after the accident. There was a "half gone"

bottle of wine (which was 19% alcohol by volume) in the car. He had been driving the car. These circumstances warranted the officer, as a reasonable person, to believe that defendant had been driving while intoxicated and provided a probable cause for defendant's arrest. See State v. Gibby, 78 N.M. 414, 432 P.2d 258 (1967).

Section 64–22–2.9, supra, states: "Only the persons authorized by section 64–22–2.1 NMSA 1953 shall withdraw blood from any person for the purpose of determining its alcoholic content. * * *" One of the persons authorized by § 64–22–2.1, supra, is a technologist employed by a physician.

The person who withdrew defendant's blood was employed by a physician. He had received training in withdrawing blood. Over an eight year period this person had withdrawn some 1600 blood samples. There is evidence that the blood taken from defendant was withdrawn in a medically approved manner. Defendant does not question the fact that the person withdrawing the blood was a technologist employed by a physician.

This technologist did not have a license. Because of the absence of a license, defendant claims the technologist was not authorized to withdraw blood under § 64–22–2.1, supra, and on this basis asserts his blood was withdrawn in violation of § 64–22–2.9, supra. This contention is based on the sentence in § 64–22–2.1, supra, which reads:

"Only a physician, licensed professional or practical nurse or laboratory technician or technologist employed by a hospital or physician shall withdraw blood from any person in the performance of a blood-alcohol test. . . ."

Defendant claims the quoted sentence clearly and unambiguously identifies five categories authorized to withdraw blood and four of them are required to be licensed. According to defendant, the categories are: (1) a physician; (2) a licensed professional nurse employed by a hospital or physician; (3) a licensed prac-

tical nurse employed by a hospital or physician; (4) a licensed laboratory technician employed by a hospital or physician; and (5) a licensed laboratory technologist employed by a hospital or physician.

■ A comparison of the statute, quoted above, with defendant's expansive reading of that statute, answers the claim that the statute is clear and unambiguous. Defendant's reading would add words to the statute which are not part of the statute as enacted. If the statute, as enacted, was clear and unambiguous, words would not have to be added. We hold the statute is ambiguous. Accordingly, we must seek the legislative intent by applying rules of construction. State v. Clark, 80 N.M. 340, 455 P.2d 844 (1969).

In seeking the legislative intent, the only category with which we are concerned is the one of technologist, because it was a person in that category who withdrew defendant's blood. The question is: Did the Legislature intend that a technologist be licensed? Our answer is: "No." Three rules of construction provide that answer.

■ One rule of construction is that this Court must presume that in enacting § 64–22–2.1, supra, the Legislature was informed as to existing law. Bettini v. City of Las Cruces, 82 N.M. 633, 485 P.2d 967 (1971). A second rule is that we are not to adopt constructions which lead to absurd or unreasonable results. Trujillo v. Romero, 82 N.M. 301, 481 P.2d 89 (1971); Midwest Video v. Campbell, 80 N.M. 116, 452 P.2d 185 (1969).

There were no provisions for the licensing of technologists at the time § 64–22–2.1, supra, was enacted. We must presume the Legislature was so informed. To construe § 64–22–2.1, supra, as requiring the technologist to be licensed would be absurd when there were no provisions for the licensing of technologists. There still are no such licensing provisions.

■ A third rule of construction is that statutes should be construed according to the purpose for which they were enact-

ed. Tijerina v. Baker, 78 N.M. 770, 438 P.2d 514 (1968); Martinez v. Research Park, Inc., 75 N.M. 672, 410 P.2d 200 (1965). Referring to New Mexico's Implied Consent Act, In Re McCain, supra, states: " * * * One purpose is to deter driving while intoxicated. Another purpose is to aid in discovering and removing from the highways the intoxicated driver. . . ." To hold that a technologist must be licensed when there are no provisions for a license, would defeat the purpose of "discovering . . . the intoxicated driver."

■ On the basis of the above rules of construction, we hold that in enacting § 64–22–2.1, supra, the Legislature did not intend that the technologist must be licensed.

Other arguments of defendant under the first point were either not raised in the trial court or need not be answered because not applicable to our implied consent law. We hold that defendant's blood was validly withdrawn under New Mexico's implied consent law.

*Instruction concerning blood test results.*

■ The jury was instructed as to the statutory presumptions stated in § 64–22–2.10(B), supra. Defendant presents several contentions as to why this instruction was error. We consider only the contention presented to the trial court. The contentions not presented to the trial court are not before us for review. State v. Johnson, 60 N.M. 57, 287 P.2d 247 (1955); State v. Compton, 57 N.M. 227, 257 P.2d 915 (1953); State v. Trujillo, 54 N.M. 307, 224 P.2d 151 (1950); State v. Lucero, 24 N.M. 343, 171 P. 785 (1918); State v. Alva, 18 N.M. 143, 134 P. 209 (1913).

Defendant's objection to the trial court was that the instruction imposed ". . . a conclusive presumption of fact on the court and the jury. . . ." This objection is directed to the portion of the instruction which states if the blood tested contains "one-tenth of one percent (.10%) or more weight of alcohol, it shall be pre-

sumed that the person was under the influence of intoxicating liquor." See § 64–22–2.10(B)(3), supra. There is evidence that the blood withdrawn from defendant was .268%.

Defendant asserts that under the "shall be presumed" language, the only discretion left to the jury was to accept or reject the test analysis. This is incorrect. The jury was not limited to accepting or rejecting the test results. Section 64–22–2.10(D), supra, provides that the presumptions in § 64–22–2.10(B), supra, "* * * do not limit the introduction of other competent evidence concerning whether or not a person was under the influence of intoxicating liquor." As defendant states, a "plethora of evidence" was admitted which went to defendant's sobriety at the time of the accident.

The "shall be presumed" language is not a conclusive presumption. What, then, is its effect? A test result of .10% or more is prima facie proof, sufficient to go to the jury, that defendant was under the influence of intoxicating liquor. State v. Johnson, 42 N.J. 146, 199 A.2d 809 (1964). The evidence giving rise to the presumption is to be considered with other evidence in the case on the question of being under the influence and the presumption may be rebutted by such other evidence. McConville v. United States, 197 F. 2d 680 (2d Cir. 1952), cert. denied, 344 U. S. 877, 73 S.Ct. 172, 97 L.Ed. 679 (1952); State v. Bailey, 184 Kan. 704, 339 P.2d 45 (1959). It is proper to inform the jury that when the required percentage is reached, the presumption exists. City of Seattle v. Bryan, 53 Wash.2d 321, 333 P.2d 680 (1958).

The trial court did not err in instructing the jury concerning the statutory presumption.

### Lesser included offense.

Defendant's request for an instruction on a lesser included offense was refused. The asserted lesser included offense is driving a vehicle while under the influence of intoxicating liquor. Section 64–22–2, supra. Defendant contends that under the evidence, the jury could have found that defendant was driving while under the influence but that this was not the proximate cause of the death which followed the automobile accident. See § 64–22–1, supra; compare State v. Sisneros, 42 N.M. 500, 82 P.2d 274 (1938). It is on this basis that defendant asserts refusal of the requested instruction was error. We disagree.

There is evidence that defendant was driving while under the influence of intoxicating liquor. This is a crime under § 64–22–2, supra. The trial court, however, is not required to instruct on every offense for which there is evidence. State v. Andrada, 82 N.M. 543, 484 P.2d 763 (Ct.App.1971).

Section 41–13–1, N.M.S.A.1953 (2d Repl.Vol. 6) states: "Upon indictment * * * for an offense consisting of *different degrees*, the jury may find the accused not guilty of the offense charged * * * and may find him guilty of any *degree of such offense inferior* to that charged. . . ." (Our emphasis). Section 41–13–1, supra, is applicable only where there are lesser degrees of the offense charged. "The trial court is not required to instruct on offenses which the evidence tends to establish unless the offense is a lesser offense included within the crime charged. . . ." State v. Andrada, supra.

Our "homicide by vehicle" statute has no degrees. Homicide by vehicle may be committed while driving under the influence of intoxicating liquor, but it may also be committed by driving while under the influence of drugs or reckless driving. Driving while under the influence of intoxicating liquor may be, but is not necessarily, an element of the homicide charge. The crime of homicide by vehicle may be committed without there being any driving while under the influence of intoxicating liquor. The converse is also true. The crime being distinct, driving while under the influence of intoxicating liquor is

not an offense included within the homicide charge. Compare State v. Andrada, supra.

There being no degrees of the homicide charge, and driving while under the influence of intoxicating liquor not being included within that charge, the trial court did not err. in refusing the requested instruction.

The judgment and sentence is affirmed.

It is so ordered.

HERNANDEZ and LOPEZ, JJ., concur.

HENDLEY and SUTIN, JJ., not participating.